**CHICAGO, R. I. & P. R. CO. v. WRIGHT.**

No. 8054—Opinion Filed Dec. 5, 1916.

Rehearing Denied Jan. 9, 1917.

(161 Pac. 1070.)

**1. Negligence — Attractive Nuisance — Jury Question.**

A child nine years of age was injured by hot water, steam, and hot mud emitted from a metal pipe, said pipe being three and one-half or four inches in diameter, attached to a stationary engine and extending out of the building in which it is located, and the end of the pipe was unguarded and unprotected. Whether the premises whereon the same is located were sufficiently attractive to allure children to the danger, and whether the pipe, in the position and manner in which it was left, was dangerous, and whether left in a dangerous condition in an attractive place known to be frequented by children, and whether the situation was such as to suggest to the railway company the probability of accident, and whether the defendant was negligent, presented questions of fact for the consideration of the jury.

**2. Same—Contributory Negligence—Children —Instructions.**

It is not error to submit to the jury the question of contributory negligence permitting the jury to take into consideration the age, experience, and maturity of the child, or that a child under seven years of age is not guilty of contributory negligence, or that a child between seven and 14 years of age is not presumed to be guilty of more than technical trespass as affecting the question of duty of the defendant in respect to the dangerous condition of the premises.

(Syllabus by Brunson, C.)

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by Ella Wright, next friend of Herbert George, a minor, against the Chicago, Rock Island & Pacific Railway Company, for damages. There was judgment for plaintiff, and defendant brings error. Affirmed.

C. O. Blake, W. H. Moore, R. J. Roberts, K W. Shartel, and Guy Green, for plaintiff in error.

Bridges & Vertrees, for defendant in error.

Opinion by BRUNSON, C. This suit was instituted on the 1st day of July, 1915. It was tried on the 20th day of October, 1915, there was judgment for the plaintiff, the defendant filed a motion for a new trial, which was overruled and exceptions saved, and the case is now before us on appeal. Before the suit was tried, the defendant in error, upon first obtaining permission of the court, amended his petition to make it read "Herbert George, by next friend, Ella Wright, plaintiff."

It is alleged substantially that Ella Wright is the mother of Herbert George, a minor, of the age of nine years; that they reside in Jefferson county, Okla.; that the defendant is a duly organized and chartered corporation engaged in the business of common carrier of freight and passengers for hire, and that it operates one of its lines through Jefferson county, Okla.; that the company, for the purpose of carrying on its business at the town of Waurika, maintains and operates a roundhouse, and in connection with said roundhouse maintains and operates a stationary engine, and has connected therewith an iron pipe about three and one-half inches in diameter, and 30 or 40 feet long, which extends out of the roundhouse on the north side thereof, and passes out of the same at an elevation of about two feet from the surface of the earth, and said engine is used for cleaning out engines or boilers, and when in such use there is emitted from said pipe boiling water, steam, and hot mud, and that said water, steam, and hot mud are emitted from said pipe without any protection or hood over the same, and that said hot water, steam, and hot mud are thrown upon the ground for a distance of 30 or 40 feet, at which place there has been formed, by reason thereof, a small pond; that said roundhouse, engine, and pipe so used for cleaning out said engines or boilers have been operated by the railroad company for the past seven years, and cinders piled around said pipe and the pond or lake so formed at the end of said pipe was attractive to children as a playground, and was so used by them. All of which fact was well known to the agents, servants, and employes of the railway company, and that said company has never taken any steps to hood said pipe, or in any wise protect the public from the danger thereof,

or to prevent children from playing thereat, and upon its premises.

It is further alleged that on the 4th day of March, 1915, said Herbert George, together with two other boys of about the same age, were playing at and near the roundhouse and near the end of said pipe, and when immediately in front of the pipe, an agent, servant, or employe of said company, without notice or warning, turned boiling water, steam, and hot mud upon said Herbert George, by reason whereof he was severely scalded and burned, and that by reason of said injuries he was confined to his bed and room for over three weeks; that he suffered intense and excruciating pain, both in body and mind, and that as a result of said burns, it has left deep and lasting scars upon the body and limbs of said Herbert George, and that by reason of said injuries, he is permanently injured, to his great humiliation, mental suffering, and disgrace; that just immediately prior to the time said boiling water, steam, and hot mud were thrown upon him, the agent, servant, or employe of said railway company saw and noticed said Herbert George and his playmates playing at and near the end of said pipe, and that he did not notify or warn them that he was going to clean out a boiler, and that there was danger, or that they were liable to be injured. And it is charged that by reason of these facts, acts, and conditions, the railway company was guilty of gross negligence, willfulness, and wantonness, and he has been greatly damaged in the sum of $3,000.

The answer was one of general denial, except that it admitted that it is a corporation engaged in operating a railroad, and that it maintains and operates said roundhouse; denied that if said Herbert George was injured, such injuries were occasioned by any negligence or carelessness on the part of the railway company, or of its servants, agents, or employes, but alleged that the said injuries, if so received, were directly occasioned by and were the proximate results of the plaintiff's own negligence. To this answer a reply was filed, denying each and all of the allegations set up as a defense in said answer.

It is contended that the court erred in giving to the jury instructions Nos. 2, 7, and 8. Instruction No. 2 reads as follows:

"(2) In this case, you are instructed that if you find from a preponderance of the evidence that said Herbert George was injured as alleged, and that such injuries, if any, were occasioned and the result of the emission of steam, water, and hot mud from the pipe as alleged in the plaintiff's petition, and you further find that the steam, hot water, and hot mud were discharged from said pipe while the employes of the company in a negligent and careless manner, and with a knowledge of the presence of the said Herbert George on the said premises, at or near the said pipe in question as alleged in his petition, and you further find that the said Herbert George was free from any negligent and careless conduct on his part which contributed to his injury, then you should find for the plaintiff, and assess his recovery at such sum as you find from all the facts and circumstances in the evidence and under the instructions hereinafter given you that you think he is justly entitled to, in no event to exceed the sum sued for, to wit, $3,000."

It is contended that the giving of this instruction was error; that it violated the rule laid down in case of Midland Valley R. Co. v Littlejohn, 44 Okla. 7, 143 Pac. 1. In that case it was held that it is error to instruct the jury so as to permit a trespasser or licensee who had suffered personal injuries from contact with dangerous things on the premises of a landowner to recover damages therefor without proof of either willfulness or wantonness on the part of such landowner. It is also contended that this instruction is contrary to the doctrine laid down in the case of the City of Shawnee v. Cheek, 41 Okla. 227, 137 Pac. 724, 51 L. R. A. (N. S.) 672, where it was held that the duty owing by a landowner to a trespassing child of ten years of age, "in respect to safety from dangerous artificial conditions of the premises" is that such landowner will not "injure him intentionally or wantonly." In both of these cases it is held that wantonness may be inferred in proper cases from an omission to correct the condition, as well as from acts of commission, where such omission "involves a reckless disregard for the safety of merely technical and reasonably anticipated trespassers."

It is contended that the court committed error in permitting the jury to return a verdict for the plaintiff if it found that:

"Hot water and hot mud were discharged from said pipe by the employes of the company in a negligent and careless manner, and with a knowledge of the presence of said Herbert George on the premises at or near the steam pipe in question as alleged in his petition."

The evidence discloses that on the 4th day of March, 1915, the day of the accident, the plaintiff in error was maintaining, and for six or seven years prior thereto had maintained, a roundhouse at Waurika, in which was located a stationary engine, a metal blowpipe three or four inches in diameter extending from it and out of the building some 40 or 50 feet; that the pipe was used for the purpose of blowing out engines; that when it blew off

it blew a stream of hot water, steam, and hot mud a distance of 60 or 70 feet beyond the end of the pipe, except when a wind was blowing strong, and that beyond the end of the pipe was formed a considerable pool of water; that from the place where the blow-pipe was turned on and off it was only about four or five feet to the door in the west side of the building; and that from this door the end of the pipe could be seen, and when the accident happened said door was open.

On the day of the accident, Harve Lowe was operating said engine, and he had operated it for something over a year prior to that time. Immediately after he turned the blowpipe on, he looked out of said door, and saw two small boys running away from the building; they were 40 or 50 feet away; he then turned the blowpipe off and went to the door, but at that time he did not see Herbert George, the boy injured, but soon thereafter he saw him going up the railroad limping. Immediately after the accident, and just after the blowpipe had been turned off, the two small boys looked and saw three men standing in the door of the roundhouse, laughing. Said Harve Lowe said he did not see the boys at the time he turned the blow-pipe on, and he did not go to the door to look to see if any one was near the pipe and liable to be injured by it; that he had never, at any time, before, turned the blow-pipe on, gone to the door, and looked to see if any one was near the end of the pipe and liable to be injured, and that he had never had instructions so to do; that several times he had seen small boys playing around the roundhouse, and knew that they occasionally visited the place. The end of the pipe was uncovered and unguarded, exposed, and not in any manner inclosed.

It was shown by H. G. Fuller that he operated the stationary engine for several years, but had not operated it during the past two or three years, and that he never, at any time, turned the blowpipe on without first going to the door to see if any one was near enough to the end of the pipe to be injured from the hot water, steam, and mud which emitted therefrom. There was a path that ran parallel with the pipe, but none that crossed in front of it. It was shown by the undisputed evidence that the danger from this pipe could have been eliminated at a cost of about $8.50.

On the day of the accident Herbert George a lad of nine years of age, and two of his companions about the same age had gone from the town of Waurika down to the vicinity of the roundhouse for the purpose of picking up small pieces of lead which were found in the waste about the roundhouse; they had been about the roundhouse for a short time, and had picked up a number of pieces of lead, when one of the boys announced his intention of going for a drink of water, the other two boys started to go home, and Herbert George started home, stepped in front of the blowpipe, and just as he did so, there were emitted therefrom hot water, steam, and hot mud, which struck him on the leg and burned him with such severity that the attention of a physician was required. The physician was called to see him several times each day for a period of about two weeks. The boy was disabled, and was confined to his bed for about three weeks, during which time he suffered severe pains. Herbert George had been to the roundhouse several times before that day, but he had never seen the pipe in use, and did not know for what purpose it was used.

Upon request of the plaintiff in error the jury was permitted to go to the roundhouse and view it, inspect the pipe and place where the boy was injured.

We gather from the argument of the plaintiff in error, the error in this instruction consists in the court charging the jury that if the injury was occasioned by the company in a negligent and careless manner, and with a knowledge of the presence of Herbert George on the premises at or near the steam pipe in question, then the plaintiff could recover, and without requiring the jury to find that the company was guilty of wantonness. It may be that the instruction would be objectionable if that was the only instruction upon the right of the defendant in error to recover, but, in another paragraph of the instruction the jury was told that, before plaintiff would be entitled to recover, he would be required to prove that he was injured through wanton and willful negligence in the manner charged in the petition.

In instruction No. 5 the jury was told that defendant in error was a trespasser, and plaintiff in error owed him no duty except that of not injuring him wantonly and willfully, and in instruction No. 6 it was explained what was necessary to constitute wanton and willful injury.

The instruction following the one complained of here was given for the purpose of explaining to the jury what defendant in error would have to establish by a preponderance of the evidence in order to recover— that they would have to show wantonness and willfulness on behalf of the company before it would be liable for the emission of

the steam, hot water, and hot mud from the pipe in a careless and negligent manner.

We do not deem it necessary to enter into an extended discussion of the attractive nuisance doctrine, as that doctrine has been fully explained in the cases above referred to, and in other cases by this court. In the case of Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120, it is said:

"In the jurisdictions where the attractive nuisance doctrine is recognized, whether or not the particular premises are sufficiently attractive to entice children into danger, and whether a certain machine is dangerous and known to be such, or where it be left in a dangerous position in an attractive place known to be frequented by children, and whether the situation was such as to suggest to the proprietor the probability of accident and to involve the question of negligence in leaving it uncovered or unguarded, are questions for the jury."

The evidence in this case is practically undisputed. The jury was permitted to inspect the place where the boy was injured and from its verdict found that the premises were sufficiently attractive to entice children into danger; that the blowpipe was a dangerous instrument, known to be such to the company; that it was left in a dangerous position in an attractive place known to be frequented by children, and that it was such as to suggest to the company the probability of accident; and that it was negligent in leaving it uncovered and unguarded. It was not error to give the instruction complained of in view of the fact that it was fully explained by the main charge.

It is contended that the court erred in giving instruction No. 7 because the same is so worded that it is "unintelligible as given." We have examined this instruction, and we think it is so worded that its meaning is reasonably clear and that the jury understood it, and besides construing this instruction, together with the whole instructions given, we cannot say that it misled the jury, or that they did not understand it.

It is next contended that the court erred in giving instruction No. 8, which reads as follows:

"You are instructed, gentlemen of the jury, that said defendant alleges in its answer that said injuries, if so received by said Herbert George, were directly occasioned and were the proximate result of the plaintiff's own negligence and want of care, and if you find from the evidence said Herbert George, through carelessness or negligence upon his part, contributed to the injuries received by him, or that said injuries were a result of his own negligence and want of care, then your verdict should be for the defendant, but in this connection you are instructed that a child under seven years of age will, and in the absence of evidence of capacity between seven and 14 years of age is presumed to, be incapable of guilt of more than technical trespass, as affecting question of duty of owner in respect to dangerous condition of premises, and the character of the trespass may be circumstance to be considered by the jury in ascertaining whether there is contributory negligence."

It is admitted that this instruction is good, if it had not embodied a question laid down in the third paragraph of the syllabus in the case of City of Shawnee v. Cheek, supra, but that this spoiled an otherwise good instruction. Said paragraph reads as follows:

"A child under seven years of age, or in the absence of evidence of capacity, between seven and 14 years of age, is presumed to be incapable of guilt of more than technical trespass as affecting question of duty of owner in respect to dangerous condition of premises, and the character of the trespass may be circumstance to be considered by the jury in ascertaining whether there is contributory negligence."

We fail to see how it could be error to give this instruction on the defense of contributory negligence. The Cheek Case was decided upon the same theory as this case; it being an attractive nuisance case. In the answer of the plaintiff in error, it pleaded contributory negligence as a defense, and under the evidence and pleadings in this case, it was the duty of the court to instruct the jury on contributory negligence and to tell it who were capable of being guilty of contributory negligence. It was not error for the court to give this instruction.

Finding no error in the record, the judgment of the lower court is affirmed.

By the court: It is so ordered.