## TEXAS, O. & E. R. CO. v. McCARROLL.

No. 10368—Opinion Filed Sept. 21, 1920.

(Syllabus by the Court.)

1. Negligence — "Licensee" — Consent of Owner.

To make one a licensee upon the premises or property of another, it must be shown that he is there by permission or authority of the owner, or his authorized agent. The permission and authority amounting to a license must be expressly or impliedly granted and mere sufferance or failure to object to one's presence upon another's premises is insufficient within itself to constitute a license, unless under such circumstances that permission should be inferred.

2. Negligence—"Invitation."

Neither sufferance, nor permission, nor passive acquiescence, is equivalent to an invitation.

3. Railroads—Care Required—Boy Riding on Pilot Step of Engine—Invitee.

The permission of a railroad company's night watchman for plaintiff to assist him in his work, and to ride on the pilot step of a steam engine, did not make plaintiff an invitee, it appearing that the night watchman had no authority to invite plaintiff to assist him or to permit him to occupy a place on the engine pilot.

4. Same—Licensee.

The permission of the railway company's night watchman, in violation of the rules and regulations of the company and his general instructions, to a 15 year old boy to ride on the pilot step of an engine, operated by the watchman, did not make the boy a licensee.

5. Same—Duty to Trespasser.

Although a trespasser is a wrongdoer, and courts do not ordinarily aid him, nevertheless, the owner of the premises (the railroad company in this case) owes him the duty not to wantonly and willfully injure him, and if discovered in a perilous position, it owes him the duty to exercise ordinary care to avoid injuring him.

6. Same—Boy Trespasser—Negligence.

If a 15 year old trespasser, riding on the pilot step of an engine on his own volition or with permission of the night watchman in charge of the engine, for the purpose of signaling the watchman, was capable or apparently capable of exercising judgment and discretion and taking care of himself under the circumstances, it was not negligence for the watchman to run the engine.

7. Negligence—Care Required As to Children.

While some authorities, on the supposed analogy to the · rule of the criminal law, hold that a child between the ages of seven and 14 years is presumptively incapable of exercising judgment and discretion, and that after he has attained the age of 14 the contrary presumption prevails, it cannot be universally presumed that persons at a definite age, say 14 years, pass suddenly from incapacity to full capacity and discretion. There is no foundation for such a presumption, and the better rule is that it is a question for the jury to determine, without regard to any arbitrary presumption, whether the particular person has capacity to understand the danger and ability to take care of himself under the circumstances.

8. Same—Duty to Trespasser in Peril.

The age, ability, and competency of a trespasser are immaterial when the master's servants discover him in a position of peril from which he cannot apparently extricate himself or take care of himself under the circumstances.

9. Railroads—Duty to Boy Riding on Engine Pilot Step — Negligence — Question for Jury.

Whether or not it was negligence to start and run an engine with a boy between the ages of 15 and 16 years standing on the pilot step is a question for the jury.

Ramsey, J., and Harrison, V. C. J., dissenting.

Error from District Court, McCurtain County; C. E. Dudley, Judge.

Action by Harvey L. McCarroll, a minor, by his next friend, L. D. McCarroll, against the Texas, Oklahoma & Eastern Railway Company for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

Plaintiff commenced this action by his next friend against defendant to recover damages

on account of its engine running over and cutting off his arm. The record shows that on September 17, 1914, plaintiff was over 15 years of age; that defendant owned and operated a railroad in connection with its lumber camp; that after the train men had finished their day's work, it was the duty of the night watchman to clean out the engine grates and fill the tender with coal, put in water, and prepare the engine for service next day; the night watchman would run the engine down to the water tank and, after taking on water, bring it back to the yard; that he had no assistants and needed none. Plaintiff testifies that he and the night watchman were friends; that the night watchman had boarded in his home while his father and mother lived near the spur track, and that at the time of the injury he was and had been boarding with the night watchman for about two weeks; that he had not had much education, but had been to school; that up to the time he came there, he had not had any experience with engines, machinery, and things of that kind; that after he began boarding with the night watchman he would work with and assist the night watchman on and about the engine; that sometimes he would go down to the engine after the night watchman left the house, and sometimes he would go with the night watchman; that the night watchman would generally take charge of the engine about 6 or 6:30 in the evening; that he had drawn the fire from the engine and made signals to the watchman when running the engine; that he had thrown the switches and coupled the cars; that the watchman had requested him to do these things; that he was not an engineer or fireman at that time and had no experience in those lines; that he remembered when he got his arm cut off; that he went with the watchman to get the water; that nothing was done to the engine before they started down to the water tank; that the water tank was about 300 yards north of the camp; that they had a lantern which he took along, but he does not remember who lit it; that as they went down for the water, they had a flat car attached to the engine, and that he was swinging on the flat car and also standing on between the engine and flat car; that it was about dark; that the engine and flat car were backed down to the water tank; that he connected the hose to run the water into the engine; that he also connected the hose with the water tank; that the watchman stayed in the cab of the engine; that another boy had the lantern, and that when they got the water in, and went around to get on the pilot step; that as he went around to get on the pilot step, he told the watchman that he would get on the pilot step and see if any cattle got on

the track as they went through the camp; that he got on the pilot step for the purpose of signaling the watchman, as engineer, if anything got on the track; that he got on the right-hand side of the engine, on the pilot step; that the watchman made no objection to his getting on the pilot step; that the pilot step was made of sheet iron, about eight or twelve inches long, and that he stood on it with his back towards the engine; that the engine started and went about 200 yards before the injury; that he was standing with his back towards the engine, facing the street; that while thus standing he saw a cow on the track ahead, and turned to signal the watchman or engineer, and as he turned, he lost his "hold someway there and slipped off"; that he was going to signal with his hand; that he knew how to make the signal; that he had learned to make signals from seeing the other fellows; that he was holding on to the hand-hold with both hands until he saw the cow and then let loose with one hand to make the signal, and when he did so, he swung around, and in order to keep from falling in front of the engine, he swung himself back, and fell on the outside so that the engine ran over one arm and cut it off; that he had been sawing timber and working with his father and made a dollar and six bits a day, being the same wages his father received; that he weighed at that time about 130 pounds; that he had great confidence in the watchman, and that they were friends; that he did not at that time realize that it was dangerous for him to be on the pilot step; that if the watchman had objected to him getting on the pilot step he would have gotten off; that when they were down at the water tank that evening, the other boy gave the signal with the lantern when to start; that he had before that given the same kind of signals; that before when they had been to the water tank, he had made signals to stop and what place to stop at; that he had made these signals to the watchman; that his object in hanging around the engine was because he had a curiosity to be about them and that he wanted to learn railroading and had told a good many people that he wanted to learn railroading; that once or twice when starting to go to bed at night (about half way to bed, he says) he would go back and stay around the engine; that on the evening of the injury he was swinging on the front end of the flat car as they backed down to the water tank; that he was hanging on the end thus and was swinging on the car like a brakeman.

The evidence shows that the night watchman knew the boy was on the pilot step when he started the engine; that he ran the

engine at the rate of about 2½ miles an hour; that no defect in the road-bed or engine or pilot step caused the boy to fall off; that after the engine started, no act of the watchman in running the engine caused the boy to fall; that the watchman had no authority, actual or implied, to employ servants or assistants, and that no emergency existed justifying him in using or accepting the services of the plaintiff; that the act of the watchman in permitting the boy to be on or about the engine was in positive violation of the rules of the company and his general instructions.

At the close of the evidence defendant, plaintiff in error, demurred to the evidence on the ground that plaintiff failed to establish a cause of action. The demurrer was overruled and a verdict returned in favor of the plaintiff.

Ames, Chambers, Lowe & Richardson, H. M. Kirkpatrick, and John S. Kirkpatrick, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter, for defendant in error.

RAMSEY, J. (after stating the case). Defendant contends that the plaintiff was either a bare licensee or trespasser; that he was of sufficient age to be charged, as a matter of law, with having assumed the risk incident to the dangerous position he occupied on the pilot step of the engine at the time the watchman moved the engine, and that, being a trespasser or licensee, it owed him no duty except that it should not wantonly or willfully injure him, and should exercise ordinary care not to injure him after discovering him in a perilous position. Defendant contends that the watchman's conduct in permitting plaintiff to assist him and occupy the dangerous place on the pilot step of the engine was wholly unauthorized, beyond the scope of his authority, and consequently the proximate cause of plaintiff's injury was either the unauthorized conduct of the watchman in permitting the boy to assist him, or the act of the plaintiff in falling off the engine; that it is admitted by plaintiff that the injury was not occasioned by any defect in the road-bed or machinery or method of operating the engine. Defendant cites a number of cases, notably Daugherty v. Chicago, M. & St. P. R. Co. (Iowa) 14 L. R. A. (N. S.) 590, holding that the master is not liable for the unauthorized acts of his employe in permitting a child to occupy a dangerous position on the master's vehicle or premises. See, also, Foster-Herbert Cut Stone Co. v. Pugh (Tenn.) 91 S. W. 199, 4 L. R. A. (N. S.) 804; Schulwitz v. Delta Lumber Co., 126 Mich. 559, 85 N. W. 1075; Mahler v. Stott, 129 Mich. 614, 89 N. W. 340;

Formall v. Standard Oil Co. (Mich.) 86 N. W. 946; Curtis v. Tenino Stone Quarries, 37 Wash. 355, 79 Pac. 955; Buch v. Amory Mfg. Co., 69 N. H. 257, 76 Am. St. Rep. 163; Bowler v. O'Connell, 162 Mass. 319, 44 Am. St. Rep. 359; Flower v. Pennsylvania R. Co., 69 Pa. 210, 8 Am. Rep. 251; Keating v. Michigan Central R. Co. (Mich.) 37 Am. St. Rep. 328.

While sometimes difficult to distinguish a license from an invitation, it is clear from the record in this case that the plaintiff was neither a licensee nor invitee. A license implies permission or authority. The permission and authority amounting to a license must be either expressly or impliedly granted. A mere sufferance or failure to object to one's presence upon another's premises is not sufficient within itself to constitute a license, unless under such circumstances that permission should be inferred. Elliott on Railroads, vol. 3, sec. 1245. Neither sufferance, nor permission, nor passive acquiescence, is equivalent to an invitation. Elliott on Railroads, vol. 3, secs. 1154 and 1249. The permission of the night watchman for plaintiff to assist him and ride on the pilot step of the engine did not make plaintiff an invitee. The night watchman had no authority to invite the plaintiff to assist him or to permit him to occupy the place on the engine pilot step. That is clear. Forbrick v. General Electric Co., 92 N. Y. Supp. 36; Larmore v. Crown Point Iron Co., 101 N. Y. 291, 54 Am. Rep. 718; Beck v. Carter, 68 N. Y. 283, 23 Am. Rep. 175. The measure of the railroad's duty to an invitee is not involved in this case, and we will pass that by. It is also clear that the plaintiff was not a licensee. Plaintiff had no permission from anyone having the slightest authority to grant him permission to be on or about the engine, and it is not shown that any authorized agent or servant of the defendant either expressly or impliedly permitted the plaintiff to be on or about the engine, and being there in violation of the rules of the company, he was not a licensee. Bouvier's Law Dictionary (3d Ed.) vol. 2, p. 1974; Means v. Southern Calif. R. Co., 144 Cal. 473, 1 Ann. Cas. 206; A., T. & S. F. R. Co. v. Cogswell, 23 Okla. 181, 99 Pac. 923; Midland V. R. Co. v. Littlejohn, 44 Okla. 8, 143 Pac. 1; Brown v. Boston & M. R. Co. (N. H.) 64 Atl. 194; Norfolk & W. Ry. Co. v. Denney's Admr., 106 Va. 383, 56 S. E. 321. Plaintiff was not upon the engine to transact any business between himself and defendant. He got on the engine on his own volition, uninvited, in violation of the rules of the company, and was a trespasser. But whether he was a trespasser or bare licensee makes no difference. If he was a mere licensee,

the defendant owed him no legal duty except not to wantonly or willfully injure him and to exercise ordinary care not to injure him when found in a perilous position. Plaintiff's counsel contend that, although the watchman had no authority to permit the boy to ride on the engine, and although plaintiff may be treated as a trespasser, nevertheless, the defendant is responsible for the conduct of the watchman in moving the engine with the plaintiff standing on the pilot step; that no matter how the boy got on the engine, whether at the invitation of the watchman or on his own motion, the defendant owed him the duty to exercise ordinary care not to injure him; that the watchman in moving the engine was acting in the line of his service and in the scope of his authority, and that when he discovered the boy on the pilot step of the engine, it then became the duty of the watchman to put the boy off, and that the failure to discharge that duty before moving the engine was the proximate cause of the boy's injury. The law is well settled in this state that, although a trespasser is a wrongdoer, and the courts do not ordinarily aid a wrongdoer, nevertheless, the owner of the premises cannot justifiably, wantonly, willfully or maliciously mistreat or injure him; also that the owner of the premises is responsible for the failure to use ordinary care to avoid injuring the trespasser after discovering his perilous position. That rule is pretty well settled in this jurisdiction. Thorp v. St. Louis & S. F. R. Co., 73 Oklahoma, 175 Pac. 240; Atchison, T. & S. F. R. Co. v. Miles, 69 Oklahoma, 170 Pac. 896; Wilhelm v. M., O. & G. R. Co., 52 Okla 317, 152 Pac. 1088. In starting and running the engine, the watchman was undoubtedly within the scope of his duty; he was performing services for his master. No one would deny that it would have been the duty of the watchman to have endeavored to stop his engine before running into a trespasser discovered in a perilous position on the track. While he had the right to presume that the track was clear, and was under no obligation to keep a lookout for trespassers, as held by this court in Atchison, T. & S. F. R. Co. v. Miles, supra, nevertheless, if he had discovered a trespasser in a perilous position on the track, it would have been his duty to exercise ordinary care to avoid doing him an injury. This brings the case down to the sole issue: Was it negligence on the part of the watchman to move the engine with the plaintiff standing on the pilot step? Now, the plaintiff was required to exercise care and caution, and when he voluntarily assumed that position on the pilot step. if he had capacity to understand the dangers, he assumed the concomitant and incidental perils of one riding

on the pilot step of an engine operated under similar circumstances. There is a great number of decisions exonerating the railroad, or owner of the premises, from damages suffered by trespassing children who have reached the age of discretion. If the plaintiff was capable of exercising judgment and discretion and taking care of himself under the circumstances, it was not negligence for the watchman to run the engine. Some authorities, on the supposed analogy to the rule of the criminal law, hold that a child between the age of seven and 14 years is presumptively incapable of exercising judgment and discretion, and that after he has attained the age of 14, the contrary presumption prevails, although the presumption may be rebutted in either case. Elliott on Railroads, vol. 3, sec. 1261. The pilot step of an engine, especially during switching, is used to stand on while the engine is in motion, and operating an engine with a competent person standing on the pilot step is neither negligence nor evidence of negligence. Of course, an engine within itself is a dangerous appliance. Though intimated by this court in Chicago, Rock Island & Pacific R. Co. v. Wright, 62 Okla. 133, 161 Pac. 1070, that the age of 14 marked the termination of presumptive incapacity to exercise proper judgment, and the beginning of such capacity, the question was not positively passed upon. No one will deny that if plaintiff had been two or three years old, it would have been negligence for the watchman to move the engine with him standing on the pilot step. Burk v. Ellis, 105 Tenn. 702, 58 S. W. 855. It would have been negligence for the watchman to move the engine with a very feeble and decrepit old person, incapable of taking care of himself, standing on the pilot step. As a matter of fact, a child ten years old may have more capacity to exercise ordinary intelligence and appreciate danger and take care of himself under such circumstances than another child 14 years old. We do not believe it can be universally presumed that persons at a definite age, say 14 years, pass suddenly from incapacity to full capacity and discretion. We do not think there is any foundation for such a presumption, and believe the better rule is that it is a question for the jury to determine, without regard to any arbitrary presumption, whether the particular person has capacity to understand the danger and ability to take care of himself under the circumstances. Whether or not a servant in charge of an engine exercised ordinary prudence in starting and running the engine with a person standing on the pilot step, and whether or not the person standing on the pilot step was guilty of contributory negligence, are questions for the jury. These ques-

tions cannot be decided arbitrarily by the age of the person standing on the pilot step. As above suggested, it would certainly be negligence to run an engine with a two or three year old child or a very old, feeble, and decrepit person standing on the pilot step. The age, ability, and competency of a trespasser are immaterial where the master's servant discovers him in a position of peril from which he cannot apparently extricate himself or take care of himself under the circumstances. If the plaintiff, or any other person, had been discovered on the track in front of the engine in a position of peril from which he could not apparently extricate himself, or apparently probably could not extricate himself, then it would have been the duty of the defendant to exercise ordinary care to avoid running over him or injuring him. Arkansas & L. R. Co. v. Sain (Ark.) 119 S. W. 659.

The majority having reached the conclusion that whether the engineer was negligent or not in running his engine, knowing the plaintiff was on the running board, was a question of fact for the jury, they fully agree with counsel for the defendant that "The question in the case is simply this: Does the evidence furnish sufficient facts under the law to warrant a recovery?" Being thus convinced that it does, and that no other question is argued in this court, it follows that the judgment of the court below must be affirmed.

RAINEY, C. J., and KANE, PITCHFORD, JOHNSON, and McNEILL, JJ., concur; HARRISON, V. C. J., dissenting.

---

RAMSEY, J. (dissenting). The opinion of the majority expresses my views down to where the majority conclude that counsel for the plaintiff in error have waived all assignments of error except one and limited their contention in this court to the sole question as to whether or not the evidence warrants a recovery in favor of the plaintiff. The petition in error assails the correctness of the court's instructions to the jury, and I am convinced from a careful consideration of the brief and abstract filed by plaintiff in error that its counsel did not intend to waive the assignments of error attacking the correctness of the court's instructions. It would serve no useful purpose to review the brief and argument for plaintiff in error. Suffice it to say that in my judgment the correctness of the instructions to the jury is presented for this court's consideration. One's assurance of the soundness of his own conclusions is always shaken by the contrary views of his associates, but being convinced that the plaintiff in error has not waived its assignments of error assailing the correctness of the instructions to the jury, I find myself unable to conclude that the instructions to the jury fairly present the law.

The court delivered ten separately paragraphed instructions to the jury, the fourth, fifth, and sixth of which cover the question of negligence, and are as follows:

"(4) If you find from the evidence in this case, by a fair preponderance thereof, that the plaintiff was allowed and permitted by G. A. Spruell, the night watchman of the engine of the defendant company, to get on the pilot step of the engine of defendant while said Spruell was in the operation of said engine for defendant, and that it was dangerous for plaintiff at his age and experience to be there, and you further find that it was negligence on the part of said Spruell in allowing or permitting said plaintiff to be on said pilot step while said engine was in motion, if he did so allow and permit him at said time, and you further find that the plaintiff was thrown off, or fell off, of said pilot step and was permanently injured, and that his injury was proximately caused by the negligence, if any, of said Spruell in permitting him to be on the pilot step of the engine while said engine was in motion, then you will find for the plaintiff against the defendant, unless you find that the plaintiff was guilty of contributory negligence.

"(5) If you find that G. A. Spruell saw and permitted the plaintiff on the pilot of the engine while the engine was in motion, and you further find that the plaintiff under the circumstances was in a perilous position, and you further find that G. A. Spruell realized that the plaintiff was in a perilous situation and moved the engine under such circumstances, and you further find that it was negligence for G. A. Spruell to move said engine while the plaintiff was on the pilot step thereof, and said negligence, if any, was the proximate cause of said plaintiff's injury, it would be your duty to find for the plaintiff.

"(6) If you believe from the evidence that plaintiff's injury, if any, was caused by the negligence of the plaintiff in trying to alight from the engine while the same was in motion, and that the rate of speed at which the engine was running would cause an ordinary boy of the age, knowledge, and experience of plaintiff to realize the danger incident thereto, it will be your duty to find a verdict for the defendant."

The ability of a person standing on the pilot step of an engine to appreciate the incidental dangers and take care of himself under the circumstances, is not important solely for the purpose of determining whether or not the person standing on the pilot step was guilty of contributory negligence. There is no such thing as contributory negligence in the absence of negligence on the part of

the defendant. The first question in every case of this character is this: Was there any primary negligence? Was the defendant guilty of negligence? And if the defendant was not guilty of negligence, then the case ends. Here was a boy, past 15 years of age, who had been around the engine and cars in friendly association with the watchman for about two weeks prior to the injury; he had learned to make signals, and was not alone interested from curiosity; he wanted to learn the railroad business, and there is nothing in this record to indicate that he was not entirely normal for a boy of his age. It is true he had not been attending school very much, but just how much the record does not plainly say; and then, besides, so-called book learning in either public or private schools is not a correct test of a boy's ability and competency to understand the dangers incident to standing on the pilot step of a moving engine, and no test for determining whether or not a boy of his age was incapable of taking care of himself under the circumstances. It is true, he was raised in the country, but he had been working around the lumber camp, earning a man's wages, and so far as this record is concerned, there is not a line of evidence, not a scintilla of evidence, showing or tending to show that he was not a boy of ordinary intelligence for his age. He was not a "sissy boy." The record convinces me that he was as alert and competent to take care of himself as a grown man, though I concede that the question of his competency and ability to take care of himself under the circumstances was a proper question to submit to the jury. While the age, ability, and competency of a trespasser are immaterial where the master's servants discover him in a perilous position from which he apparently cannot extricate himself, the position in and of itself is not sufficient. Whether the position of a trespasser or mere licensee is perilous in the sense that it creates a duty on the part of the railroad to exercise ordinary care to avoid injuring him depends upon something more than the place occupied. In addition to the place occupied, one of three things must appear to the railroad's servants: (1) either that he did not know of his danger or peril and therefore could not be presumed to take care of himself, or (2) that he knew of his danger but could not extricate himself, or (3) that he could not extricate himself from his place of peril, irrespective of whether or not he had knowledge thereof. Being a trespasser or mere licensee, plaintiff is not in a position to invoke the doctrine of apparent authority of the watchman, and can only hold the company liable for acts of the watchman done within the scope of his actual authority, express or implied. Elliott on Railroads, vol. 3, sec. 1255. The majority opinion expresses my view in holding that the watchman in moving the engine was within the scope of his service. But I am convinced the plaintiff must show something else in addition to the moving of the engine by the watchman. No one will contend that the plaintiff was a passenger and that the railroad owed him the duty it owes a passenger. Finley v. Hudson Electric R. Co., 19 N. Y. Supp. 621; White v. Illinois Central R. Co. (Miss.) 55 South. 593; Clarke v. L. & N. R. Co. (Ky.) 111 S. W. 344; Roberts v. Southern Pacific R. Co. (Mo. App.) 150 S. W. 717; Flower et al. v. Pennsylvania R. Co., 69 Pa. St. 210, 8 Am. Rep. 251. Plaintiff must show either that some act of negligence on the part of the company intervened between the starting and running of the engine and the boy's injury which primarily caused the injury, or that the plaintiff neither had nor apparently had sufficient judgment and discretion to appreciate the peril of his position on a moving engine and take care of himself under the circumstances. The burden of proof is on the plaintiff to prove these things, one or the other. Contributory negligence is a defense, but the issue as to whether or not there was contributory negligence cannot be reached until after it has been determined first that the defendant was guilty of negligence. The instructions given by the court and excepted to by the defendant do not draw the line between want of authority in the watchman to invite or permit the boy to be on the engine, and liability irrespective of want of authority. Instruction No. 4 is erroneous in that it substantially instructed the jury that defendant was liable if it found three concurrent things, to wit: (A) that the watchman permitted the plaintiff to go on the pilot step of the engine while he was in charge of the engine; (B) that it was "dangerous for plaintiff at his age and experience to be there", and (C) that it was negligence for the watchman to permit plaintiff to go on the pilot step. "A", above, is wrong, because defendant was in no way responsible for the act of the watchman in permitting the plaintiff to go on the pilot step. The watchman was wholly without the scope of his authority and not acting in the service of his master in permitting the boy to get on the pilot step. The authorities settle this beyond question. Keating v. Michigan Central R. Co., 97 Mich. 154, 37 Am. St. Rep. 328; Flower et al. v. Pennsylvania R. Co., 69 Pa. St. 210, 8 Am. Rep. 251; Powers v. Boston & M. R. Co. (Mass.) 26 N. E. 446; Mahler v. Stott (Mich.) 89 N. W. 340; Bergan v. Central Vermont R. Co. (Conn.) 74 Atl. 937; Thompson v. N., C. & St. L. R. Co. (Ala.) 49 South. 340; Clarke v. L. & N. R.

Co .(Ky.) 111 S. W. 344; Sloan v. Railway Co., 62 Iowa, 728; Railway Co. v. Propst, 83 Ala. 518; Eason v. Railway Company, 65 Tex. 577, 57 Am. Rep. 606; McDaniel v. Railway Co., 90 Ala. 64; Church v. Chicago, M. & St. P. R. Co. (Minn.) 16 L. R. A. 861; Roberts v. Southern Pacific Company (Mo. App.) 150 S. W. 717; Schulwitz v. Delta Lumber Co. (Mich.) 85 N. W. 1075; Curtis v. Tenino Stone Quarries (Wash.) 79 Pac. 955; Grimshaw v. Lake Shore & M. S. R. Co., 205 N. Y. 371, 40 L. R. A. (N. S.) 563; Daugherty v. Chicago, M. & St. P. R. Co. (Iowa) 114 N. W. 902, 14 L. R. A. (N. S.) 590; Foster-Herbert Cut Stone Co. v. Pugh, Admr. (Tenn.) 4 L. R. A. (N. S.) 804; 33 Cyc. 817. Now, "B", that it was "dangerous for plaintiff at his age and experience to be there," is erroneous, because it is coupled with the permission of the watchman, and also because it failed to make the judgment and discretion, that is, the ability of the boy, or his apparent ability to understand the dangers and take care of himself, the test. Also "C" is meaningless and probably harmless. The fifth instruction made the test of liability this: Was it negligence to move the engine with the plaintiff standing on the pilot step, if the jury found the watchman realized plaintiff was in a perilous position? That instruction is utterly misleading in that it fails to make the question, whether or not the running of the engine with the boy standing on the pilot step was negligence, depend on whether or not plaintiff proved that he was incapable of understanding the danger, and that his inability to understand it and take care of himself under the circumstances was apparent to the watchman, or should have been apparent to a reasonably prudent person occupying a similar position. Trespassers are presumed to take care of themselves, and the watchman had the right to presume, in the absence of knowledge or notice to the contrary, that the plaintiff understood the dangers incident to his position and that he was competent to take care of himself under the circumstances. While plaintiff's ability to understand the dangers and take care of himself under the circumstances was a question for the jury, there is not an authority, text-writer, or adjudicated case holding that there is a presumption that a boy over 15 years of age is incompetent to understand the danger of riding on the pilot step of an engine, or incompetent to understand the ordinary dangers surrounding him. I think the court should have instructed the jury as follows:

"If you find from a preponderance of the evidence that the plaintiff, by reason of his age and want of intelligence, was not capable of appreciating the danger of riding upon the pilot step of the engine, and that the watchman invited or permitted him to get upon it, and it was apparent to a prudent man operating the engine under similar circumstances that the plaintiff was not capable of understanding the dangers incident to his position and apparently unable to take care of himself under the circumstances, then the defendant is liable for the injuries inflicted by running the engine, although defendant's watchman may have been forbidden by the rules of the railroad and his general instructions to permit anyone to ride upon the engine. If, however, you find that the plaintiff had such a degree of intelligence that he could and should have appreciated and understood the danger of his act, or that he was apparently capable of understanding the danger of riding on the pilot and taking care of himself under the circumstances the engine was actually run, then the burden is upon plaintiff to prove that the watchman who invited or permitted him to ride upon the engine had authority to do so, and the rules of the company forbidding employes to permit persons to ride upon the engine are admissible upon this issue, whether the plaintiff knew of their existence or not. And if under such circumstances you find the watchman had no such authority, then the plaintiff cannot recover."

See M., K. & T. R. Co. v. Rodgers (Tex.) 36 S. W. 243; Elliott on Railroads, vol. 3, secs. 1254 and 1255; 33 Cyc. 817.

This court has applied section 6005, Rev. Laws 1910, in numerous cases, and time does not permit an analysis of them. That section says that no judgment shall be set aside or new trial granted by the appellate court "on the ground of misdirection of the jury * * * unless, in the opinion of the court to which application is made, after an examination of the **entire record**, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." I agree with the authorities holding that it is not enough to show that the trial court committed error—the burden is on the appellant to show that the error was prejudicial. This court does not try law cases de novo, but on the record from the court below. Section 5002, Rev. Laws 1910, requires the court to instruct the jury. The trial judge is not the judge of the facts, but is the judge of the law. The jury is not the judge of the law, but of the facts. The sole and only purpose of the charge to the jury is to give it the legal rules controlling its consideration of the facts and conclusions therefrom. I construe section 6005, Rev. Laws 1910, to mean this: If the instructions are erroneous in that they misdirect or fail to properly instruct the jury with respect to the legal rules controlling its deliberations on the

vital issue of fact in the case, then this court should grant a new trial or examine the entire record and decide the case uninfluenced by the verdict. What I understand by examining the entire record is not a mere examination for the purpose of ascertaining whether or not there is any evidence reasonably tending to support the verdict of the jury, but whether or not the verdict of the jury is correct—the right verdict. The great weight of American authority, both federal and state, holds that in the case of error, prejudice will be presumed unless the record shows that it was harmless. 2 Standard Proc. 471. The difficulty arises in the effort to determine what is harmless and what is prejudicial error. If an instruction on an abstract or collateral question is erroneous, then it may be said to be harmless and there is no presumption of prejudice. But the parties are entitled to have the jury instructed, and that means that the instructions are a necessary part of the trial according to law. No one denies that a party is entitled to have his case tried by law and according to legal principles. When the error is in the concrete, goes to the very marrow of the vital question of fact involved, how can this court decide whether or not the error was prejudicial unless it examines all the facts and decides that the verdict should have been for the winning party? When the erroneous instruction is not in the abstract, but in the concrete, that is, an instruction going to the very marrow of the question, and it is erroneous, then one or the other of two things must be done by this court: (1) Either the judgment should be set aside and the case remanded for a new trial on the ground that it is a statutory and constitutional right of a party to have correct and legal instructions given to the jury, and that erroneous instructions in the concrete amount to a denial of a constitutional or statutory right; or (2) this court must examine all the evidence—that is, consider the evidence independent of and uninfluenced by the jury's verdict, consider the evidence de novo, and arrive at its own conclusion—and if from an examination of all the evidence, this court decides that the winning party was not entitled to the verdict, then the case should be reversed. In my opinion, it is more important to maintain the integrity of the law than it is to sustain the isolated verdict of a jury. When the error goes to the marrow of the case, when the erroneous instruction is misleading on the vital issue of fact, then the judgment should be reversed or this court should examine the evidence de novo on the theory that the adjudicated error in the instruction sets the matter at large and confers upon this court jurisdiction to examine the evidence for the purpose of deciding the question of fact put in issue between the parties, as distinguished from the usual and established rule that this court in law cases passes only upon questions of law, and not upon questions of fact. Whether there is sufficient evidence to go to the jury in the first instance is a question of law. McDonald v. Strawn (decided by this court June 1, 1920) 78 Okla. 271, 190 Pac. 558. Without an examination of all the evidence uninfluenced by the verdict of the jury, this court cannot say whether or not there has been a miscarriage of justice. If this is not the correct construction of section 6005, Rev. Laws 1910, then there is no reason or sense in the court giving the jury any instructions whatever. No instructions are better than erroneous instructions, and if erroneous instructions on the vital issue do not set the matter at large, and call upon this court to examine all the evidence with a view to deciding whether or not the verdict was for the right party, irrespective of the verdict of the jury and uninfluenced thereby, then instructions to juries should be abolished in this state. The human mind has devised no art by which the mental processes of a jury can or may be discovered. No one will have the hardihood to dispute the assertion that it is better to give a jury no instructions than to give a jury erroneous instructions, and yet if instructions, erroneous in the concrete, have no further effect than to call upon this court to discover whether or not there is any evidence reasonably tending to sustain the judgment, although the preponderance of the evidence may be for the losing party, then such rule should be clearly and unequivocally announced in order that a movement may be brought about either to abolish all instructions to juries, and leave juries the triers of the law and the facts, or repeal or amend section 6005, Rev. Laws 1910.

Believing the instructions to be erroneous on the vital question in the case, I pass to an examination of the facts uninfluenced by the verdict of the jury. Here was a boy past 15 years of age who had been around the engine and cars in friendly association with the watchman for about two weeks prior to the injury; he had learned to make signals, and was not alone interested from curiosity; he wanted to learn the railroad business, and there is nothing in this record to indicate that plaintiff was not entirely normal for a boy of his age. There is nothing in the record to show that he was not as competent as a full grown man to appreciate the dangerous position he occupied on his own volition, and to take care of himself under the circumstances. Plaintiff does not contend that any act of the watchman or any defect in the machinery caused him to fall

off the engine. He had been working in the lumber camps, working with his father running a saw, and drawing a man's wages. He weighed 130 pounds. The pilot step of an engine is made for the very purpose of riding on it during switching. The boy was holding on to the hand-holds and no defect in the hand-holds or engine or road-bed caused him to fall off. I do not reach the question of contributory negligence. The first question is: Was the defendant negligent? And that depends on whether or not it owed him any duty. The watchman had no authority to permit the plaintiff, a trespasser, to get on or ride on the engine pilot. But when the watchman found him on the engine pilot, the question is whether or not starting and running the engine without steam, at a speed not in excess of 2½ miles per hour, constituted primary negligence on the part of the company. Under all the facts and circumstances, I am of the opinion the plaintiff has not shown primary negligence by a preponderance of the evidence, and I think the judgment should be reversed.