**WILLINGHAM et al. v. PANICK.**

No. 3421.

Circuit Court of Appeals, Tenth Circuit.

May 7, 1947.

---

Clayton B. Pierce, of Tulsa, Okl., for appellants.

Draper Grigsby, of Oklahoma City (John F. Eberle, of Oklahoma City, on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Edith Panick, a minor, brought this action by her father as her next friend, against A. C. Willingham, as principal, and the National Casualty Company as surety, to recover damages for injuries sustained while riding in a truck owned by Willingham and being driven at the time of the accident by an employee, Ray Lapre. This is an appeal from a verdict by the jury for $2,000, and judgment entered thereon by the trial court.

Willingham, a resident of San Antonio, Texas, operated a motor freight line between San Antonio, Texas, and Oklahoma City, via Dallas, Texas, under a permit issued by the Interstate Commerce Commission. Shortly before the accident in question, he hired Ray Lapre as a driver. Lapre was a resident of San Antonio, Texas. At the time of his employment, Willingham ascertained that he lived at San Antonio and that he had a chauffeur's license issued by the State of Texas, and that he had been working for the Brown Express of San Antonio. At the time of his employment Lapre was instructed that no persons were to be carried in the equipment and his truck bore a "No Riders" sign on the windshield. In 1943 Lapre held a chauffeur's license from the State of Oklahoma. This license was suspended on November 10, 1943, for a year, because Lapre had been convicted of driving while drunk. Willingham had no knowledge of this and did not know that Lapre had ever resided or worked in Oklahoma. He made no inquiry at the time he employed Lapre as to whether he had ever held a chauffeur's license in Oklahoma.

On the day of the accident, appellee was employed as a waitress at the Copper Top Restaurant, at the edge of Oklahoma City. This was a place where truckers frequently stopped for something to eat. On the evening of the day of the accident, Lapre stopped there and drank two beers. Appellee had a conversation with him, in which he told her that he was going to Dallas. She told him that she had a sister in Dallas whom she desired to visit. He invited her to ride to Dallas with him. She accepted the invitation and accompanied him on the trip to Dallas.

Appellee was injured about 40 miles south of Oklahoma City when the truck failed to make a turn in the road in the City of Purcell, and overturned. The evidence as to the manner in which the truck was being operated at the time was in sharp conflict. Appellee testified that Lapre had been driving from 48 to 50 miles per hour and that he was driving at this speed when they approached the curve where the truck overturned. She testified that she had warned him several times and asked him to slow down. Several witnesses testified that the truck was traveling at from 25 to 30 miles per hour.

The assignments of error relied upon for reversal are: (1) That the trial court erred in denying appellants' motion to dismiss and denying their motion and request for an instruction directing a verdict in their favor. (2) That the court erred in instructing the jury that appellants were liable as a matter of law if the jury found that the driver of the truck was guilty of

ordinary negligence which proximately contributed to appellee's injury.

■ Appellants' contention is that appellee was a trespasser and that the rule of law is that the driver of a vehicle is not liable to a trespasser for injuries suffered, unless they result from wanton or gross neglect on his part. Oklahoma has held that one who accepts an invitation of a driver of a vehicle, who has no express or implied authority to invite passengers to ride with him, is a trespasser as to the owner of the vehicle, and that when the vehicle is being driven by a servant in the course of his employment, the owner is liable for an injury to such trespasser caused by the negligence of the servant only when the negligence is gross or wanton and the injury is wilfully and wantonly inflicted.[1] Under this rule, appellee was a trespasser. Lapre was expressly forbidden to invite persons to ride with him. Furthermore, appellee knew this, because the cab had a "No Riders" sign on it.

■ The rule that the owner of a vehicle driven by an employee is liable for damage to a trespasser only if the injury is the result of wanton or gross neglect has been somewhat modified in Oklahoma. It has been held that when a driver once discovers a trespasser in a position of peril, he thereafter owes a duty to exercise ordinary care to avoid injuring him,[2] and that failure then to exercise ordinary care to prevent injury to the trespasser constitutes wilful or wanton negligence.[3] It follows that the court erred in giving the instruction complained of. It should have instructed the jury in substance that appellants would be liable only for damages resulting from the wilful or wanton acts of negligence on the part of the driver, but that failure on his part to exercise ordinary care to avoid injury after discovering the trespasser in a position of peril would constitute wilful or wanton negligence, for which appellants would become liable. Whether the facts were such as would

bring this case within this rule is not an issue in this appeal and is not before us for decision. It is sufficient to say that the instruction complained of as given was erroneous.

The court's instruction that appellants would be liable as a matter of law if the driver was guilty of ordinary negligence which contributed to the injury was based upon certain statutes which it will be necessary to note.

47 O.S.A. § 274(b) provides that: "No person shall operate a motor vehicle as a chauffeur unless he holds a valid chauffeur's license."

47 O.S.A. § 275, subd. 4 provides: "A nonresident who is at least eighteen (18) years of age and who has in his immediate possession a valid chauffeur's license issued to him in his home State or Country may operate a motor vehicle in this State either as an operator or chauffeur except any such person must be licensed as a chauffeur hereunder before accepting employment as a chauffeur from a resident of this State."

47 O.S.A. § 299 provides that: "Any resident or nonresident whose operator's or chauffeur's license or right or privilege to operate a motor vehicle in this State, has been suspended or revoked as provided in this Act, shall not operate a motor vehicle in this State under a license, permit, or registration certificate by any other jurisdiction, or otherwise during such suspension, or after such revocation, until a new license is obtained, when and as permitted under this Act." -

47 O.S.A. § 306 provides that: "No person shall authorize or knowingly permit a motor vehicle owned by him, or under his control, to be driven upon any highway by any person who is not authorized hereunder, or in violation of any of the provisions of this Act."

47 O.S.A. § 307 provides that: "No person shall employ as a chauffeur of a motor vehicle any person not licensed as provided in this Act."

[1] Barall Food Stores v. Bennett, 194 Okl. 508, 153 P.2d 106; Texas, O. & E. Ry. Co. v. McCarroll, 80 Okl. 282, 195 P. 139.

[2] Texas, O. & E. Ry. Co. v. McCarroll, 80 Okl. 282, 195 P. 139; Thorp v. St. Louis & S. F. Ry. Co., 73 Okl. 123, 175 P. 240; Atchison, T. & S. F. Ry. Co. v. Miles, 69 Okl. 138, 170 P. 896.

[3] Barall Food Stores v. Bennett, 194 Okl. 508, 153 P.2d 106.

47 O.S.A. § 308 provides that: "Any person as herein defined, who is the owner of any motor vehicle and knowingly permits such motor vehicle to be operated by any person who is not qualified to operate a motor vehicle under the provisions of this Act, shall be held civilly liable as a joint tort feasor for any unlawful act committed by such operator."

■ It must be conceded that Section 299 disqualified Lapre from driving the truck in question in Oklahoma, because his Oklahoma chauffeur's license had been revoked. For this reason he could not operate under his Texas license, under the provisions of Section 275. Appellee argues that Willingham is liable because he violated Section 306, which provides that no one shall knowingly employ one not authorized to operate in Oklahoma, and Section 307, which provides that no person shall employ a chauffeur not licensed as provided in the Act. It may be conceded that because of these sections Willingham could not lawfully employ Lapre to operate the truck in Oklahoma. But his liability by virtue of such employment for injuries resulting from the negligent operation of Lapre, is fixed by Section 308, and a determination thereof requires a construction of that section.

■ Appellants' position is that Section 308, correctly interpreted, imposes liability only when the owner of the vehicle has knowledge that the operator whom he permits to operate the vehicle is disqualified within the meaning of the Act. With this construction we agree. Appellee, on the other hand, takes the position that the word "knowingly" modifies the word "permits", which it immediately precedes. Under such a construction, the word "knowingly" would be mere surplusage and would add nothing to the meaning of the section because the word "permit" connotes knowledge and consent. Unless the word "knowingly", then, is to be mere surplusage and be wholly inoperative, it must apply to the lack of qualifications of the driver. This, in our opinion, is the correct interpreta-

tion to be placed upon this section. We think Section 308 is to be construed as though it read in substance as follows: "Any person as herein defined who is the owner of a motor vehicle and permits such vehicle to be operated by a person, knowing such person not to be qualified under the provisions of this Act, shall be civilly liable as a joint tort feasor. * * *"[4]

■ Willingham neither knew nor had reason to know that Lapre ever lived in Oklahoma, had operated under a license there, or had a license revoked in that state. He knew that he lived in San Antonio, Texas, and made sure that he had a license from that state, and in the absence of any other facts or circumstances which should put him upon inquiry, we think he had the right to rely upon Section 275 in employing him.

■ Since Section 308 imposes no liability upon Willingham, liability against him depends upon whether Lapre was conscious of the peril in which appellee was placed a sufficient time before the accident so that by the exercise of ordinary care he could have prevented injury to her. If he was, and failed to exercise such care, he was guilty of such wilful or wanton negligence under the Oklahoma decisions as would impose liability upon Willingham. This question should have been submitted to the jury under a proper instruction.

In the oral argument before this court, appellee for the first time took the position that the National Casualty Company was liable under its public liability policy of insurance on file with the Oklahoma Corporation Commission irrespective of any liability on the part of Willingham. The argument in support of this contention is that under the policy, as well as Form E Endorsement, attached thereto, Lapre, the driver, was an additional insured and that therefore the company's liability for his negligence in no wise depended upon whether Willingham was liable for such negligence. This was not the theory upon which the case was tried in the court below nor was the point urged or developed

---

[4] The following authorities, in our opinion, support this construction: 32 Words and Phrases, Perm.Ed., Permit, page 144; 48 C.J. page 924; Commonwealth v. Wills, 121 Ky. 103, 89 S.W. 144; United States ex rel. Kasparian v. Hughes, D. C., 278 F. 262; Beale v. Yazoo Yarn Mill, 126 Miss. 807, 88 So. 411.

**618**

in the brief filed by appellee. In the oral argument appellee was given time to file a supplemental brief on this question. This brief has been received and has been considered.

■ As indicated above, the judgment must be reversed and the cause remanded for a new trial. In this posture of the case, we are of the opinion that this question should be presented to the trial court when the case is again tried, in an orderly and regular way and where both parties have an opportunity to be fully heard, and that we should not in the first instance pass upon this question in this appeal.

The judgment is accordingly reversed and the cause is remanded, with directions to proceed in conformity with the views expressed herein.