## HOYT v. ST. LOUIS-S. F. RY. CO.

No. 20423. Opinion Filed Nov. 3, 1931.

John L. Wood and Phil W. Davis, Jr., for plaintiff in error.

E. T. Miller, Cruce & Franklin, and G. W. Satterfield, for defendant in error.

CLARK, V. C. J. This action was com-

menced in the district court of Tulsa county by plaintiff in error, C. M. Hoyt, against St. Louis-San Francisco Railway Company, a corporation, defendant in error herein.

The parties will be referred to as they appeared in the trial court.

Plaintiff's action was for personal injuries received, and damage to his truck, by reason of a collision and impact of the truck of plaintiff, in which he was riding and operating, with one of defendant's freight trains, which collision occurred between Tulsa and Dawson, Okla., and at and near Dawson.

Plaintiff alleged that the injuries and damage to plaintiff were solely and proximately caused by the negligence of defendant, to wit:

"(a) The defendant failed, neglected, and refused to maintain any signaling device, bell, sign, or watchman, or guard or gates at said crossing, or any other means for the purpose of warning, advising, or signaling persons using said public highway crossing of the approach of trains of the defendant from the west thereof.

"(b) The defendant, by and through its said servant and agent, to wit, said engineer, who was then and there in charge as engineer of a locomotive engine pulling said train over said crossing, omitted to cause a bell to ring, or a steam whistle to sound at the distance of at least 80 rods from the place where said track crossed at the same level with said public highway.

"(c) The defendant failed and neglected at said time to ring any bell on said locomotive engine, or whistle any steam whistle thereon at the distance of at least 80 rods from the place where the said railroad crossed said road or public highway.

"(d) The defendant negligently permitted said weeds to grow and remain upon said right of way and said freight car to be and remain upon said spur track so that the same obstructed the view of the plaintiff of approaching trains.

"(e) The defendant negligently permitted the situation heretofore described to exist at or near said public crossing or its right of way so that the view of persons crossing said main public highway was obstructed as to trains approaching from the west.

"(f) The defendant by its said servants and agents operated said train at a high, dangerous, reckless, and unnecessary rate of speed over said public crossing, to wit, at a speed of 40 miles per hour.

"(g) The defendant failed and neglected to warn, signal, or advise plaintiff of the approach of said train to said crossing.

"(h) The defendant failed to ring and keep ringing the bell upon said engine as it approached said crossing, so as to warn plaintiff of the approach of said train, and failed to whistle and keep whistling the steam whistle upon said engine as it approached said crossing."

Demurrer of defendant to first amended petition was overruled, to which ruling the defendant excepted.

Answer of defendant was a general denial and a plea of contributory negligence.

Reply of plaintiff was a denial of the new matter in said answer which is inconsistent with or contrary to the allegations of plaintiff.

Upon a trial of said cause by a jury the demurrer to plaintiff's evidence was overruled, and excepted to, and defendant introduced its evidence and rested, and plaintiff introduced his rebuttal and rested; and thereupon the defendant moved for a directed verdict. And after argument thereon plaintiff moved to dismiss his action without prejudice, which was denied by the trial court for the reason the court had indicated what he was going to do, to which plaintiff excepted.

Thereupon the court sustained the motion of defendant for directed verdict and instructed the jury to return a verdict for the defendant, to which the plaintiff excepted and objected to the reception of the verdict.

Motion for new trial was filed by plaintiff and overruled, to which action of the trial court plaintiff excepted and gave notice of appeal, and brings the cause here for review.

The plaintiff in error contends that:

"The court was wholly without authority or right to direct a verdict for the defendant, because the plaintiff fully sustained the issues upon his part, established the negligence of the defendant, that it was the cause of his injury and also established the damages that resulted from the defendant's negligence. The questions of fact could be legally determined by the jury only."

The plaintiff, Hoyt, testified, in substance:

That, in August, 1927, he was living just outside of the city limits on the west side of Dawson, which is something like five or six miles east of Tulsa; that he was trucking, hauling, and farming at that time. That defendant company had a line of railroad between Tulsa and Dawson on which it operated its trains. That parallel with said defendant's track was a paved highway run-

ning from Tulsa to Dawson on the north side of defendant's track; and that on the south side of defendant's track was another paved highway running from Tulsa to Dawson known as Federal Drive; that about a quarter of a mile west of Dawson the two highways are joined together by a north and south paved highway. That defendant's tracks cross the north and south highway about 100 feet south of the east and west highway that runs between Tulsa and Dawson on the north side of defendant's tracks. That in the northwest corner of the intersection of the defendant's main line and the north and south highway is an elevator which was about 40 feet north and south, and possibly 50 or 60 feet east and west and probably 40 feet high, and that the elevator was about 40 feet from the west edge of the pavement, and that it has a platform that extends north and south from the northeast corner out toward the pavement. That on the south side of the elevator and between the elevator and the defendant's main line is what is known as a spur track; that the north rail of the spur track is about three or four feet from the elevator; and the spur track ends at about 15 feet from the north and south pavement. That on the day of the accident there was a box car at the end of the spur track, and that there was a dirt pile near the end of the freight car. That south of the spur track and between the spur track and the main line is a switch track that crosses the said north and south paved road. That west of the elevator was a mound of dirt, and the main line track runs through a cut right west of the elevator. That south and west of the railroad crossing were dwelling houses. That north of the elevator were trees ten to fifteen feet high. Also houses and other obstructions north of the elevator.

That about 9:30 or 10:00 o'clock in the morning of August 23, 1927, plaintiff started from his home to Tulsa driving his Ford truck. That he came south of his home to the east and west pavement and secured gasoline and then came west to the intersection of the pavement and slowed up for another car and then turned south toward the crossing of the defendant company. That after he turned south he could not see a train coming from the west on account of the elevator building and trees, and the high dump from the cut that is west of the elevator. That he drove on down to the place to stop by the track, put his Ford truck in low, going probably 3 or 4 miles an hour; then drove up to where he stopped right opposite a box car standing on the spur track; that he

looked west and listened and did not see or hear anything, and he saw a fellow coming from the south in a car, and that the plaintiff looked east and stepped on the low gear of his car and started on when the accident happened. Did not hear any whistle; that his hearing was good before the accident. That he could have heard a bell upon a locomotive engine sounded within 500 feet of the crossing. That he was listening for a train. That his motor was not making any noise to speak of. That he stood still long enough to satisfy himself that no train was coming. That when he was stopped he could see possibly 30 feet west of him on the main track. That automobiles crossed this place almost continuously.

The plaintiff's witness Jackson testified that he was walking on the pavement about 75 yards from the crossing at the time of the collision, and saw the collision; saw plaintiff stop and then start to go on and the train hit him, and knocked him about 50 feet. That after the train hit him it went on to about 40 feet of the depot at Dawson.

Plaintiff's witness Yingling, who had been in the employ of the Frisco as foreman in the track department, testified: That west of the crossing where the collision occurred, 500 feet, was a bridge, and there was a small cut between the bridge and the crossing, which is west of the elevator. That there are places in Oklahoma where railroads use signal bells automatically, and signals, and there are places where they use gates to keep the people back from crossing the crossing when trains are approaching, and also flagmen.

Plaintiff Hoyt testified that there was no flagman, no bell, no light, and no gate at the crossing; there was nothing there only just a whistling post at the railroad crossing and stop sign "Stop State Law."

One of the defendant's witnesses, Jim Smith, testified that he was about 700 to 1,-000 feet from the crossing and heard the train whistle for the station and the last series of crossing whistles was near the bridge.

The evidence disclosed that the train that had the collision with plaintiff was coming from the west.

The fireman, who was in the cab on the left side, testified that the first time that he saw the plaintiff's car it was about ten feet from the crossing and that they were approaching the crossing.

The train crew and other witnesses for defendant testified that the engineer whistled

for the station and then whistled at the crossing board and then half way from there to the crossing; last whistle blown almost on the crossing, bell ringing as approached the crossing.

The evidence disclosed that the crossing was between a one-fourth and one-half mile from the station at Dawson and that after the accident the emergency brake was applied and train stopped as quickly as possible and stopped at the station at Dawson; that the train did not intend to stop at Dawson.

In the case of Matthews v. Mounts, 81 Okla. 245, 197 P. 708, this court said in the the syllabus:

"1. The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith.

"2. When any competent evidence has been presented for consideration of the jury reasonably tending to prove the issues, the court should deny a motion for a peremptory instruction and, under proper instructions from the court, the cause should be submitted to the jury for their determination.

"3. The trial court should not direct a verdict where it is necessary to weigh the evidence to determine where the preponderance lies."

In the case of St. Louis-San Francisco Railway Co. v. Thompson, 139 Okla. 142, 281 P. 565, in the fifth paragraph of the syllabus, this court said:

"Where a crossing of a public highway across a railroad track is unusually dangerous because of its peculiar construction and situation, mere sounding the statutory signals by those in charge of a train approaching such crossing may or may not be all that is required at a particular time and place. It is a question for the jury to determine under all the facts and circumstances whether or not the signals and warnings given and sounded are such as are reasonably necessary in a given case."

In the case of St. Louis-San Francisco Railway Co. v. Robinson, 99 Okla. 2, 225 P. 986, in the third paragraph of the syllabus, this court said:

"Plaintiff testified that he stopped at the crossing, looked, and listened; that he did not see the engine nor hear the signal. Held, such testimony was not purely negative, and

was competent to go to the jury, the value of same depending on whether plaintiff was in a position to hear and see, and was giving special attention to the matter at the time."

Also, in the case of St. Louis-San Francisco Railway Co. v. Russell, 130 Okla. 237, 266 P. 765, this court in the body of the opinion said:

"It has been repeatedly held by this court, and many others, that evidence that one did not hear a signal given when he was in a position to hear and could have heard had it been given, is not purely negative in character, but is a positive statement of a fact."

To the same effect is the case of St. Louis-San Francisco Railway Co. v. Ford, 139 Okla. 64, 281 P. 248.

And in the case of M., K. & T. Railway Co. v. Perino, 118 Okla. 138, 247 P. 41, in the first and third paragraphs of the syllabus, this court said:

"1. If a railroad company, in the ordinary conduct of its business, leaves freight cars standing upon a side track at or near a public crossing, so as to partially obstruct the view of persons passing over such crossing, such fact of itself does not render the company liable for accidents occurring at the crossing, but merely imposes a duty of greater care both upon the company and upon those using the highway."

"3. In a suit for personal injuries, the question whether defendant's negligence is the proximate cause of the injury sustained should be left to the jury, where the evidence is conflicting, or where men of ordinary intelligence might differ as to the effect of the evidence on a point. The court should define proximate cause to enable the jury to determine whether the negligence alleged was the proximate cause, since in order for negligence to create liability, it must be the proximate cause of the injury."

We are of the opinion that in the case at bar, taking into consideration the undisputed testimony as to the obstructions on the west side of the highway approaching the crossing, the trees, elevator, mound of dirt and cut west of the elevator, the box car at the end of the spur track, and the dwellings and other obstructions in the neighborhood of the crossing; and the positive evidence of plaintiff that he stopped, looked both east and west, and listened for a train, and did not see nor hear one, and did not hear any whistle blowing or bell ringing, and that he was listening for a train and could have heard a bell upon a locomotive sounded within 500 feet of the crossing, and that he stood still long enough to satisfy himself that no train was coming, and that his hearing was

good before the accident; and plaintiff's evidence that he stopped at the crossing being corroborated by one witness that saw plaintiff stop at said crossing; and that the crossing was used almost continually, and the further fact that the fireman riding in the cab on the side of the engine from which the plaintiff approached the track did not see plaintiff until plaintiff's car was about ten feet from the rails, and that the pilot of the engine was approaching the crossing; and the further fact that the emergency brakes of the train were immediately applied and train stopped as soon as possible, and did not stop until it had gone between a quarter and half mile, nearly half mile— was sufficient competent evidence, together with such inferences and conclusions as may be reasonably drawn therefrom, to have been submitted to the jury under proper instructions as to whether or not the defendant's negligence, if any, was the proximate cause of the plaintiff's injury, if any, as the trial court was without authority to weigh the evidence to determine where the preponderance lies, and we therefore conclude that the trial court erred in directing a verdict for the defendant.

With reference to plaintiff's first assignment of error, that the court erred in refusing to dismiss this case without prejudice, it is unnecessary for this court to pass upon this assignment, inasmuch as this case must be reversed for the reasons heretofore stated.

For the reasons stated, the judgment of the trial court is reversed, the cause remanded for a new trial.

HEFNER, CULLISON, SWINDALL, and KORNEGAY, JJ., concur. LESTER, C. J., RILEY, ANDREWS, and McNEILL, JJ., absent.

Note.—See under (3) 26 R. C. L. 1068. (5) 20 R. C. L. 169; R. C. L. Perm. Supp. p. 4851; R. C. L. Pocket Part, title "Negligence," § 141.