**HENRYETTA CONSTRUCTION CO.,**
Plaintiff in Error,

v.

**Jim R. HARRIS, Defendant in Error.**

No. 40348.

Supreme Court of Oklahoma.

May 25, 1965.

Rehearing Denied and Dissenting Opinion
Filed Oct. 26, 1965.

Rucker, Tabor, Shepherd & Palmer, Robert L. Shepherd, O. H. "Pat" O'Neal, Paul McBride, Tulsa, for plaintiff in error.

K. D. Bailey, Okmulgee, Whit Pate, Norman, Simon B. Spradlin, Oklahoma City, for defendant in error.

JACKSON, Vice Chief Justice.

In the trial court the plaintiff Jim R. Harris, sued the defendant, Henryetta Construction Company, for damages for personal injuries he received when he fell into an open drainage inlet on a bridge being built by the defendant company. From verdict and judgment for plaintiff the defendant has appealed.

In defendant's first proposition for reversal it is said:

"Proposition No. 1: The duty to keep premises reasonably safe for invitees applies only to defects or conditions in the nature of hidden dangers, traps, snares, pitfalls, and the like: owner or occupant of premises is under no legal duty to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care. The trial court erred in overruling defendant's demurrer to the evidence of the plaintiff and defendant's motion for a directed verdict at the close of the trial as there was a failure of proof of any negligence act on the part of the defendant."

The evidence shows that the bridge in question had been constructed by defendant company under contract with the State Highway Department. The bridge was located on Interstate Highway No. 35 at its intersection with S. E. 104th Street in Oklahoma City. It appears from the record that the concrete for the surface of the bridge was poured on or about August 3, 1959, at the west side of the bridge, and within a few feet from the north end of the bridge an open drainage inlet was constructed for the drainage of water from the bridge. The inlet is described as 16 inches wide, 28 inches long, and 36 inches deep. The degree of visibility of the inlet from the surface of the bridge is not evaluated by testimony.

A State Highway engineer testified that the normal procedure for installing grates over the inlets was while the concrete was still "green," and that this hole or inlet had remained open from August 5, 1959, until September 28, 1959 (the day of the accident), according to his records. He also testified that on September 28, 1959, the bridge was approximately 99% complete.

On September 28, 1959, the asphalt contractor was rolling the asphalt from the roadway to the north end of the bridge and was in the process of "tying the asphalt in" to the north end of the bridge. This process was accomplished by a ten or twelve ton roller.

Plaintiff was an employee of the State Highway Department. For about a year his responsibilities had consisted of inspecting the paving on several miles of Interstate Highway No. 35 in Oklahoma City, which was then under construction. There were several bridges on this portion of the highway, and while he had no responsibilities for inspecting bridges, it was his responsibility to inspect the "tie-in" between the surface of the paving and the surface of the bridge. On the day of the accident he was making such an inspection at the north end of the bridge, and testified concerning the accident as follows:

"A. I had driven up to the project where I had some inspectors checking the work of the contractor and they were tying the asphalt in. I finished my checking and walked over to where the men were working. I stood there two or three minutes and this roller was rolling the asphalt from the roadway to the bridge. There was a 10 foot straight-edge lying in its path. I stepped two or three steps forward and stepped back and fell into an open inlet.

"A. Oh, about three and a half steps backward.

"A. Yes, I fell into it and struck the edge of the concrete on the way down and fell into the hole."

As noted from defendant's proposition No. 1 the duty to keep premises reasonably safe "applies only to defects or conditions in the nature of hidden dangers, traps, snares, pitfalls and the like", and "the occupant of premises is under no legal duty to obviate known and obvious dangers". Defendant's theory that the danger was open and obvious and should have been observed by the plaintiff in the exercise of ordinary care was submitted to the jury. At the request of defendant, the court gave the following instructions:

"Instruction No. 4.

"You are instructed that the Plaintiff, when he came upon the bridge assumed all normal or ordinary risks attendant upon use of the bridge and the Defendant was under no duty to alter the premises so as to eliminate known and obvious dangers. In this respect you are further instructed that the defendant is not responsible or liable for injury to the plaintiff resulting from a danger which was obvious or should have been observed in the exercise of ordinary care.

"You are therefore instructed that if you find that the condition of the bridge while under construction was a normal and ordinary risk then you must return your verdict for the defendant.

"Instruction No. 5.

"You are instructed that it is the duty of the Defendant to keep the premises reasonably safe as to defects or conditions that are in the nature of hidden dangers, traps, snares, and the like, and the Defendant has no duty or obligation to make such conditions known to the Plaintiff if such conditions or defects could have been observed by the plaintiff in the exercise of ordinary care."

■ Since the jury was told in Instructions Nos. 4 and 5 that the defendant was not responsible or liable for dangers which were obvious and should have been observed in the exercise of ordinary care, it follows that the jury must have concluded that the open inlet constituted a hidden danger, trap, or snare, for employees of the asphalt contractor and the State Highway Department who would necessarily be working in that area during the "tie-in" period. The evidence is sufficient to support such a conclusion. Thus the duty to keep the premises reasonably safe as to traps, snares and hidden dangers had been violated.

Defendant invites attention to City of Tulsa v. Harmon, 148 Okl. 117, 299 P. 462; City of Drumright v. Moore, 197 Okl. 306, 170 P.2d 230; Skelton v. Sinclair Refining Company, Okl., 375 P.2d 948; Safeway Stores, Inc. v. McCoy, Okl., 376 P.2d 285; Hull v. Newman Memorial Hospital, Okl., 379 P.2d 701; and Safeway Stores, Inc. v. Sanders, Okl., 372 P.2d 1021. Those cases dealt with situations where the dangers were obvious and as readily apparent to the person injured as they were to the owner or occupant. In the instant case the jury undoubtedly found that the "inlet" was in the nature of a hidden danger.

In the last sentence of Defendant's Proposition No. 1, it is said that the trial court erred in overruling defendant's motion for a directed verdict "as there was a failure of proof of any negligent act on the part of the defendant."

■ In negligence cases we have frequently said that the facts of each particular case are controlling upon the question of negligence in respect to the dangerous condition of the premises, and whether such facts constitute negligence is ordinarily a question for the jury. Pruitt v. Timme, Okl., 349 P.2d 4.

■ In Guerrero v. Tiblow, Okl., 382 P.2d 120, we quoted with approval from Breno v. Weaver, 208 Okl. 14, 252 P.2d 487, as follows:

" 'In an action for damages based on negligence, a demurrer to the plaintiff's evidence presents no question as to the plaintiff's negligence. The sole question thereby presented is whether the evidence in any reasonable inference shows the defendant guilty of negligence, a proximate cause of the plaintiff's injury. By article 23, section 6, of the Constitution the jury is made the sole arbiter of the existence or non-existence of contributory negligence.' "

■ In discussing the duty of one independent contractor to another during the period of construction of a building our attention is invited to the fourth paragraph of the syllabus in Lisle v. Anderson, 61 Okl. 68, 159 P. 278, L.R.A.1917A, 128, wherein we held:

"Where the defendants had a contract with a school board to erect a school building complete save a heating and ventilating system, and the company for whom the plaintiff was working had a contract with the said school board for installing the said heating and ventilating system, and the defendants and the company for whom the plaintiff was working were each at the same time carrying out

their respective contracts with the school board, and the defendants, under and by virtue of the terms of their contract, were to furnish and install joists in the attic of said school building, upon which a tank that was to be a part of the heating and ventilating system was to be placed by the plaintiff, and the defendants knew that this was one of the purposes for which the said joists were to be used, and after the defendants had selected and installed the said joists in said attic, but before said defendants had fully completed their contract with said school board and turned the building over to the school board, the plaintiff, in installing the said tank, went upon said joists, and one of the joists broke, and as a result thereof the plaintiff fell and was injured, held, that if the defendants knew, or by the exercise of ordinary care could have known, that the plaintiff might be reasonably expected to go upon the joists in installing the tank, the defendant owed the plaintiff the duty to exercise ordinary care in the selection of said joists, although the relation of master and servant did not exist."

In 38 Am.Jur., Negligence, § 108, it is said:

"The sound rule appears to be that a property owner is charged with notice of the use of his property by a licensee and with the duty of keeping a lookout to avoid injury to the licensee at the time and place where his presence may reasonably be expected. * * *."

An informative annotation appears in 38 A.L.R. at page 403, entitled "Personal liability of contractor in respect of injuries sustained by persons other than the contractee during the progress of the stipulated work." An annotation dealing with "Liability of adjoining property owner for injury to one deviating from highway or frequented path" is found in 14 A.L.R. at page 1397.

■ From our review of the record presented in this case we are unable to agree that there was a failure of proof of negligence on the part of the defendant.

In defendant's argument our attention is invited to the fact that plaintiff testified that he did not look to see where he was going and concludes that plaintiff fell because he was not looking. Further, that if plaintiff had been exercising reasonable care for his own safety he could have, would have, and should have seen the open and obvious drain, and that such failure on plaintiff's part was the primary cause of the accident. In considering this argument we have not overlooked plaintiff's testimony on cross examination wherein he testified:

"Q. The grate or drain—those drains are on all of those bridges, are they not?

"A. Yes.

\* \* \* \* \* \*

"Q. And you were aware of that?

"A. Yes.

"Q. You had been over this bridge before, hadn't you?

"A. Yes, I probably had.

\* \* \* \* \* \*

"Q. Had it been completed as far as work to be done was concerned?

"A. I wasn't the inspector on it, so I don't know.

"Q. I didn't ask you if you were the inspector. Did you know and could you tell by your observation?

"A. I know the grating wasn't on. That's the only part that I knew wasn't completed.

\* \* \* \* \* \*

"Q. You never looked where you backed?

"A. No sir."

■ The foregoing argument, and testimony in support thereof, go to the questions of proximate cause and contributory negligence. The questions of proximate

cause and contributory negligence are of course questions for the jury where there is any competent evidence from which such questions may be determined. Hart v. Lewis, 187 Okl. 394, 103 P.2d 65; Hoyt v. St. Louis-S. F. Ry. Co., 153 Okl. 7, 4 P.2d 747; C. R. Anthony Co. v. Williams, 185 Okl. 564, 94 P.2d 836.

■ In defending against the charge of contributory negligence plaintiff invites our attention to the "emergency" confronting the plaintiff as the roller moved the asphalt in the direction of the straight-edge, and to 65 C.J.S. Negligence § 120, at page 726, wherein it is said:

"Momentary forgetfulness of, or inattention to, a known danger may, and usually does, amount to negligence, but forgetfulness of, or inattention to, such danger will not always constitute negligence. * * * Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger. In order to excuse forgetfulness of, or inattention to, a known danger, some fact, condition, or circumstance must exist which would divert the mind or attention of an ordinarily prudent person; * * *."

In an annotation appearing in 74 A.L.R. 2d at page 960, cases are collected on the question of "Sufficiency of diverting circumstances", and in which the author states:

"Perhaps the majority of the cases, however, have taken the view that while some substantial diverting circumstances must be shown, the sufficiency of that diversion as an excuse should ordinarily be left to the trier of the fact."

Since Art. 23, Sec. 6, Okla.Const. directs that the defense of contributory negligence shall in all cases be a question of fact for the jury, it may be doubtful whether the principles above set forth could be submitted to the jury (as commenting upon the evidence). On this question we express no opinion. However, it may well be that the jury considered the "emergency" and diverting circumstances as having a bearing upon the question of plaintiff's contributory negligence.

■ In its second proposition for reversal the defendant contends that the trial court erred in refusing its motion for a medical examination of the plaintiff after the plaintiff had, during the trial, exhibited his body to the jury for inspection by his doctor. Jewel Tea Co. v. Ransdell, 180 Okl. 203, 69 P.2d 69.

In this connection the record shows that when plaintiff's doctor was testifying in direct examination in reference to plaintiff's injuries the following occurred:

"Q. In your examination, did you determine any atrophie as to the muscles?

"A. Yes, and he is still a little bit listed to the left.

"Q. Could you show the jury for us?

"A. (Mr. Harris comes to stand before the jury). I don't know, let's see. Yes.

"A. As you can see, he's a little out of kelter. This is an involuntary muscle pull. He cannot do this himself voluntarily."

During this procedure the defendant objected to the display of plaintiff before the jury and requested a medical examination, which was denied by the court.

A recess was apparently taken and plaintiff's counsel was permitted to make unsworn statements to the effect that in response to a prior motion for a physical examination counsel had offered in open court to submit plaintiff for a physical examination, and that when plaintiff's deposition had been taken that plaintiff himself had

agreed to submit to a physical examination by a doctor of defendant's choice. Counsel for defendant was apparently not present when the offers were made and was unable to deny that such offers were made.

In argument to the trial court counsel for the defendant stated:

"* * * I would never have raised this question at all if the plaintiff had not exhibited himself to the jury because there is no question in my mind that by reason of doctor and plaintiff in front of the jury with the doctor pointing out and placing his hands on the hip and discussing the plaintiff's alleged condition that I am entitled to an examination."

Plaintiff's counsel responded to this argument, as follows:

"My position is this, that they were tendered an examination in the office and again on September 5th, that they had an opportunity to have an examination and had every reason to expect that there would be an exhibition of this man's body before the jury. There usually (is) in back cases to show that atrophy has set in. The second condition is that there was no demonstration of the body. The man's clothes were on."

The trial court made no finding of facts on this question and the record does not disclose his reason for denying the request of the defendant. We are therefore unable to determine whether the request was denied because of former offers of physical examination, or whether it was denied upon the theory that the demonstration, if error, was harmless.

Under the circumstances here described we are unable to find reversible error.

 Defendant contends that in any event a remittitur should be required because of the error in exhibiting and demonstrating plaintiff's condition to the jury, and because plaintiff's injuries will not support a $65,000.00 verdict.

Plaintiff's doctor testified that plaintiff has sustained a ruptured disc in his back; that he still had at the time of trial (May 17, 1962) a "lingering type of pain"; had a little numbness in the calves of his legs; that the disc is worn out; still has atrophy in his muscles; still a little bit listed to the left; and has an involuntary muscle pull. The doctor further testified that in operations performed on the back 40% of the patients still had trouble.

Considering the evidence as a whole we are unable to conclude that a remittitur should be ordered. Southern Kansas State Lines Co. v. Crain, 185 Okl. 1, 89 P.2d 968.

The judgment of the trial court is affirmed.

WILLIAMS, BLACKBIRD, IRWIN and HODGES, JJ., concur.

HALLEY, C. J., and DAVISON and BERRY, JJ., dissent.

HALLEY, Chief Justice (dissenting).

In my judgment the majority opinion is based on a false premise. To me it assumes that plaintiff had a right to be on the bridge under construction which I think is incorrect. The defendant was constructing the bridge for the Oklahoma Highway Department but the plaintiff had nothing to do with its construction. He was an inspector of asphalt paving and was not shown to have anything to do with the construction of the bridge. He was definitely not an inspector on this bridge. As to the bridge he was a trespasser. He had the right to inspect the tie up of the paving on the bridge and the highway which was not on the bridge. This bridge was not open to traffic. Plaintiff's witness Ward testified on cross-examination as follows:

"Q. And on September 28th, this bridge was not completed?

"A. That's correct.

"Q. The public wasn't on it? It wasn't travelled?

"A. Not officially, no.

"Q. It was barricaded, wasn't it?

"A. Yes.

"Q. There was a bridge inspector on the job daily, wasn't there?

"A. Yes.

"Q. That was his job to be on the bridge?

"A. Yes.

"Q. *Mr. Harris had no job to perform on the bridge did he except to see that the asphalt came up to the bridge properly?*

"A. *That's correct, I believe.*" (Emphasis supplied.)

At one place in his testimony plaintiff testified:

"Q. You were interested in the surfacing of the roadway that came up to the bridge?

"A. Yes.

"Q. You had no interest in the bridge?

"A. Only to see that the asphalt tied in to the pavement.

"Q. This bridge was not part of your duties?

"A. No sir."

It is well settled that as a general rule no duty exists toward a trespasser except to refrain from wilfully or wantonly injuring him. 65 C.J.S. Negligence § 24.

Certainly if plaintiff were not a trespasser he could not be anything more than a licensee by permission. See 65 C.J.S. Negligence § 32, subsection b at p. 488. A licensee by permission was defined in Millspaugh v. Northern Indiana Public Service Co., App.Ct. of Ind., 12 N.E.2d 396, at page 401 as follows:

"The courts recognize two classes of licensees; namely, licensees by invitation and licensees by permission. To a licensee by invitation the occupant of the premises assumes the obligation of making and maintaining them in a reasonably safe condition for the use of the licensee while he remains thereon by virtue of such invitation, and, for a violation of this duty, the owner is liable in damages to a person injured thereby who is himself free from contributory negligence. A licensee by permission is one who for his own convenience, curiosity, or entertainment, goes on the premises of another by his (the owner or occupant's) permission or sufferance. Such a licensee takes the premises as he finds them as to any defects thereon, and the owner is not liable for any injuries resulting to such licensee owing to defects in the condition of the premises. The owner is not liable for passive negligence. Cleveland, C., C. & St. L. Ry. Co. v. Means, 1914, 59 Ind.App. 383, 104 N.E. 785, 108 N.E. 375; Thistlewaite v. Heck, 1920, 75 Ind.App. 359, 128 N.E. 611, 612."

In Julian v. Sinclair Oil & Gas Co., 168 Okl. 192, 32 P.2d 31, we said:

"In differentiating between an invitee and a licensee, an invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it."

I submit there was no common interest or mutual advantage to plaintiff and defendant in this case by virtue of plaintiff going on this bridge which was away from his duties.

The plaintiff relies on Lisle v. Anderson, 61 Okl. 68, 159 P. 278, L.R.A.1917A, 128. I do not think it is controlling or in point.

The distinction between this case and Lisle v. Anderson, supra, is that in the case here the plaintiff had no right to be on the premises while in Lisle v. Anderson, supra, plaintiff had the right to be on the premises and use the joists that caused the accident. The plaintiff in the case at bar must take the premises as he finds them and there is no duty on the defendant to insure him a safe place to view the asphalt work.

There is nothing in the law that requires a contractor on a public job to protect an employee of the contractee from possible

injuries from falling on incompleted parts of the bridge, which employee has nothing to do with the construction of a public improvement on which the contractor is engaged.

Plaintiff's own testimony showed he had completed any work he might have where the tieing in was taking place.

I dissent to the majority opinion.

## SUPPLEMENTAL OPINION ON REHEARING

IRWIN, Justice.

■ On Rehearing, defendant argues that plaintiff was at most a bare licensee. Under the facts herein presented, we can not sustain this argument. When plaintiff was upon the bridge in a general area where his presence was necessarily required, presumptively desired, his presence should have been reasonably anticipated because of its connection with defendant's business.

■ A building inspector's presence upon the premises in discharge of his duty is for a purpose connected with the owner's or occupant's business, and there is a mutuality of interest in the subject to which the inspector's presence relates. An invitation is inferred in cases of common interest or mutual advantage. Julian v. Sinclair Oil and Gas Co., 168 Okl. 192, 32 P.2d 31; Fred Howland, Inc. v. Morris, 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013. By all respectable authority a building inspector is accorded the status of persons entering by invitation and stands on an equal footing with a business visitor or invitee. 20 R.C.L., Negligence, Sec. 54, p. 62; 38 Am.Jur., Negligence, Sec. 126, p. 786; Annotations in 128 A.L.R. 1021.

■ True it is, the law does not require the possessor of land to protect the invitee against dangers which are so apparent and readily observable that one would reasonably expect them to be discovered. The possessor's duty applies to conditions or instrumentalities which "are in the nature of hidden dangers, traps, snares and the like." Safeway Stores, Incorporated v. Sanders, Okl., 372 P.2d 1021; Hull v. Newman Memorial Hospital, Inc., Okl., 379 P.2d 701. A hidden danger within this rule of liability need not be totally or partially obscured from vision or withdrawn from sight; most generally, the phrase is used to denote a condition presenting a deceptively innocent appearance of safety "which cloaks a reality of danger". Deception, camouflage, deceit and fraud in concealment are the very concepts to which the hidden peril theory of liability traces its historical origin. Initially the principle was applied in favor of licensees. Almost from the very inception the rule did embrace within its ambit "an act of making a hole in a path and leaving it insufficiently covered." W. H. Griffith, "Licensors and 'Traps'," 41 The Law Quarterly Review, pp. 255, 258; Mull v. Roosevelt Irr. Dist., 77 Ariz. 344, 272 P.2d 342.

■ Familiarity with the physical condition which causes plaintiff's injury does not serve to bar conclusively his right of recovery. Nor does it alone make him guilty of contributory negligence in what he does or fails to do. "Want of ordinary care, and not knowledge of the danger, is the test of contributory negligence." Grantham v. Watson Bros. Transportation Co., 142 Neb. 362, 367, 6 N.W.2d 372, 9 N.W.2d 157, 158; see also, Surface v. Safeway Stores, Inc., 8th Cir., 169 F.2d 937, 940. The attention which one must give to his surroundings in governing his actions is not a legal absolute. It will vary in accordance with circumstances.

■ Familiarity with the existing physical conditions at most operated to discharge defendant's obligation to warn him of the existence of such conditions. But the question of whether defendant did, under the facts, fail in his duty to provide plaintiff adequate protection, by means of guards, barriers or other devices or measures, from harm occasioned by the dangerous condition of its own creation, remained one for the jury. Prosser, Handbook of the Law of Torts, Sec. Ed., pp. 459, 460. To a bare licensee the possessor of land owes merely the duty to exercise reasonable care to dis-

*close* to him dangerous defects which are known to him and are unlikely to be discovered by the licensee. Toward the *business* visitor, such as plaintiff, the possessor owes the *additional* duty to exercise reasonable care to make the premises reasonably safe for the reception of such visitor. See, Restatement of Torts, Secs. 342, 343, Comment.

As we view the evidence, it cannot be said as a matter of law that want of protective covering in the offending instrumentality was apparent and readily observable. The condition so created may have presented an appearance of safety to one who was unaware of the defect. The question was properly one for the jury. Magnolia Petroleum Co. v. Barnes, 198 Okl. 406, 179 P.2d 132, 135.

Rehearing is accordingly denied.

JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, HODGES and LAVENDER, JJ., concur.

HALLEY, C. J., and DAVISON and BERRY, JJ., dissent.