Phyllis Paige BROWN, Appellant,

v.

Suzanne NICHOLSON, Glenda Pate, and Ken Spears, Appellees.

No. 86855.

Supreme Court of Oklahoma.

March 18, 1997.

Randall A. Breshears and Gayle Freeman Cook, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellant.

Edwin F. Garrison, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellees Suzanne Nicholson and Glenda Pate.

Donald R. Wilson, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee Ken Spears.

OPALA, Justice.

We are asked to decide today whether the evidentiary material tendered by defendants to support the trial court's summary judgment in their favor provides undisputed proof of: 1) plaintiff's status as a licensee when she was injured in a fall upon defendants' premises, and 2) the open and obvious character of the premises' defect, which the defendants urge. We answer in the negative.

Phyllis Paige Brown (Brown) sued Suzanne Nicholson, Glenda Pate, and Ken Spears, the owners of a downtown Oklahoma City office building (owners), alleging that owners were negligent in their maintenance of the building's parking ramp. While walking down that ramp to get to her office at the street level, Brown slipped, fell, and broke her leg. Owners sought and secured summary judgment. The Court of Civil Appeals affirmed. The issue framed on appeal was Brown's status as an entrant upon the property. The appellate court concluded her status was that of a *licensee* who had permission to park and was aware of the dangers posed by the ramp, of which owners had no duty to warn. Upon this *status-based classification* the appellate court affirmed the owners' summary judgment. Brown sought certiorari, claiming *invitee* status on the property. We hold that Brown's status as a licensee *vel* invitee presents a *question of fact,* as does the alleged actionability of the defect on the parking ramp.

## THE ANATOMY OF LITIGATION

Between November 1993 and August 1994 Brown was employed as a legal secretary for Oklahoma City lawyer Ken Nicholson. She was told by her employer to park on the roof of a building co-owned by Nicholson's wife Suzanne, along with Glenda Pate and Ken Spears. The record does not clearly establish the ownership of the east and west sides of the building in question. It was apparently its east side that contained the rooftop parking area. Brown parked there daily and

then descended on foot a steep ramp to the street level below.

Two to three months after Brown was hired by Ken Nicholson, his wife Suzanne started working in her husband's offices. Suzanne Nicholson also parked on the roof-top of her building, and personally "reaffirm-ed" to Brown her husband's permission to park there. Brown received these parking privileges without cost. She slipped on a few occasions before the event in contest while going up and down the ramp, and personally observed one woman fall on the slick asphalt surface. Owners were aware that several women had reported falling on the ramp. Brown mentioned the ramp's condition "half a dozen times" to her boss and two other employees of the law firm. Weather-strip-ping devices had been placed on the ramp, but the record is unclear when this precau-tion was installed. The strips had partially worn away by March 31, 1994 when Brown fell on the ramp and broke her leg. She was then wearing low-heeled shoes to assist her negotiation of the incline. At the time of the fall, she was standing on "what was remain-ing" of the weather strips. Claiming the ramp was negligently maintained, Brown sued owners.

Owners sought summary judgment, urging Brown could not recover because she was a *licensee* on the premises and owners had no duty to warn her of the ramp's condition because she had personal knowledge of its steep nature and of the prior accident. The trial court agreed with owners' position. The Court of Civil Appeals, noting Brown had been aware of the possible danger, deter-mined, as *a matter of law*, that she was a licensee who "took the premises as she found them," and affirmed the summary judgment. On certiorari, Brown claims she was an *invi-tee*, entitled to a higher duty of care from owners. Because the trial court's disposition was effected by summary judgment, the is-sues on review stand before us for *de novo* examination.[1]

**WHETHER OWNER OF PREMISES EXERCISED PROPER DUTY OF CARE TO VISITOR WHO WAS PERMITTED TO USE THE PREMISES AND WHOSE PRESENCE SHOULD HAVE BEEN AN-TICIPATED PRESENTS A DISPUTED ISSUE OF FACT; WHERE FACTS ARE DISPUTED, SUMMARY ADJUDICATION IS INAPPROPRIATE.**

A landowner's liability in negli-gence for a person's injury on the premises varies with the entrant's status.[2] Brown's status is either that of an invitee or a licen-see. Licensees are those who enter premises of another for their own benefit or pleasure by express or implied permission of the own-er.[3] Those considered licensees are to be accorded by the owner a duty of care which extant jurisprudence terms "ordinary care.[4]" The owner owes to the licensee, at a mini-mum, the duty to disclose dangerous defects which are known to him (or her) but are unlikely to be discovered by the licensee.[5]

An invitee, on the other hand, is considered to be one who uses the premises of another for the purpose of a common interest and mutual advantage.[6] The owner owes the invitee a duty of "reasonable care,[7]"

---

1. Issues of law are reviewable by a *de novo* standard. An appellate court claims for itself plenary, independent and non-deferential author-ity to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hospital Authority*, Okl., 859 P.2d 1081, 1083 (1993); *See also Salve Regi-na College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

2. *Sutherland v. Saint Francis Hospital, Inc.*, Okl., 595 P.2d 780, 781 (1979); *Henryetta Construc-tion Co. v. Harris*, Okl., 408 P.2d 522, 531 (1965); *Paubel v. Hitz*, 339 Mo. 274, 96 S.W.2d 369, 373 (1936).

3. *Good v. Whan*, Okl., 335 P.2d 911, 913 (1959); *Julian v. Sinclair Oil & Gas Co.*, 168 Okl. 192, 32 P.2d 31, 33 (1934).

4. *See* note 3, *supra*.

5. *Henryetta Construction Co. v. Harris, supra*, note 2 at 531; *Byford v. Town of Asher*, Okl., 874 P.2d 45, 51 (1994) (Opala. J., concurring).

6. *Sutherland v. Saint Francis Hospital, Inc., su-pra*, note 2 at 781; *Henryetta Construction Co. v. Harris, supra*, note 2 at 530; *Julian v. Sinclair Oil & Gas Co., supra*, note 3 at 33.

7. *Rogers v. Hennessee*, Okl., 602 P.2d 1033, 1034 (1979); *Jack Healey Linen Service v. Travis*, Okl., 434 P.2d 924, 926 (1967).

and an invitee who is a business visitor is entitled to that care which would make the premises safe for his reception.[8]

■ The *"ordinary* care" the licensee can expect and the *"reasonable* care" the invitee can enjoy is dependent upon the particular visitor's frequency upon the premises,[9] her knowledge of the conditions of the premises,[10] and the extent of the permission granted by the owner.[11] Thus, "ordinary care" or "reasonable care" as a guideline in negligence actions does not have a fixed meaning. It is a variable concept, to be viewed as shifting with the circumstances of each case.[12]

■ According to the appellate court, Brown was a licensee who entered the parking area for her own benefit. This conclusion appears to rest on the notion that Brown was not required to pay her employer's wife for the use of the parking space. Heavy reliance is placed on Brown's familiarity with the hazardous nature of the ramp and knowledge of another woman's previous fall. This information appears to have been viewed as exculpating owners from legal liability. *We reject the appellate analysis as flawed.* Neither Brown's *status* as an entrant on owners' property nor *the nature of the hazard,* if any she encountered on the ramp's incline, can be settled as a matter of law based upon the record before us.

The evidentiary materials *do not eliminate* but tender key questions of fact. The first issue centers on Brown's parking space secured from her employer's wife. Brown was not paying rental but this may have been attributable to the Nicholsons' inter-spousal arrangement. The fact that the owner-wife approved the parking arrangement raises the question of agency, and Brown's employer's role as agent. Brown's entry status—whether that of licensee or invitee—can be shown either by owner's permission or by that of the owner's authorized agent, who her employer may have been.[13] Because Brown's parking convenience could be deduced to have been of mutual benefit to her employer, her status might be elevated to that of a business visitor—an *invitee.* All these circumstances are sufficient to present Brown's status as a disputed *question of fact,* and not one of law.[14]

Regardless of Brown's precise entry status on the premises, owners owed her a duty to exercise care to keep the premises reasonably safe from hidden dangers, traps, snares, and the like.[15] Her familiarity with the condition of the ramp is not fatal to her recovery,[16] and whether her foreknowledge should have prevented the harm is to be measured by a reasonable and objective standard.[17]

**8.** *Henryetta Construction Co. v. Harris, supra,* note 2 at 530.

**9.** *Good v. Whan, supra,* note 3 at 914.

**10.** *Rogers v. Hennessee, supra,* note 7 at 1033; *Byford v. Town of Asher, supra,* note 5 at 53.

**11.** *Julian v. Sinclair Oil & Gas Co., supra,* note 3, at 33.

**12.** *City of Shawnee v. Drake,* 69 Okl. 209, 171 P. 727, 730 (1918).

**13.** *Texas, O. & E. Ry. Co. v. McCarroll,* 80 Okl. 282, 195 P. 139, 141 (1920).

**14.** *Henryetta Construction Co. v. Harris, supra,* note 2 at 525; *Jack Healey Linen Service v. Travis, supra,* note 7 at 927.

**15.** *See Henryetta Construction Co. v. Harris, supra,* note 2 at 530, where it is stated: "A hidden danger within this rule of liability need not be totally or partially obscured from vision or withdrawn from sight; most generally, the phrase is used to denote a condition presenting a deceptively innocent appearance of safety which cloaks a reality of danger." *See also Byford v. Town of Asher, supra,* note 5 at 51; *Rogers v. Hennessee, supra,* note 7 at 1034; *Sutherland v. Saint Francis Hospital, Inc., supra,* note 2 at 783; *Jack Healey Linen Service Co. v. Travis, supra,* note 7 at 927.

**16.** *Byford v. Town of Asher, supra,* note 5 at 53; *Jack Healey Linen Service v. Travis, supra,* note 7 at 927.

**17.** *See Byford v. Town of Asher, supra* note 5 at 51, where it is stated: "Whether harm from an open and obvious defect is actionable depends on the objective standard of due care—i.e., whether under similar or like circumstances an ordinary prudent person would have been able to see the defect in time to avoid being injured." *See also Henryetta Construction Co. v. Harris, supra,* note 2, at 531; *Jack Healey Linen Service Co. v. Travis, supra,* note 7 at 927.

The record indicates a conflicting timetable concerning the weather-stripping devices placed on the ramp. (The fact that such precaution was taken at all might indicate the ramp's inherently dangerous nature.) Brown's deposition testimony indicates the strips were installed *shortly before her accident* and after that of someone else. Owners' answers to interrogatories estimate the strips were placed there possibly *two years before Brown fell.* It is equally uncertain whether Brown's fall, while standing on the remnants of the strips, was caused by a hidden snare due to the strips' disintegrated form, or whether some other existing defect or danger contributed to her fall. This uncertainty makes summary judgment inappropriate. Whether the defect was open and obvious or whether, as Brown was approaching the *locus in quo,* the offending condition had a deceptively innocent appearance presents a question for the jury.[18]

### SUMMARY

By the evidentiary material in the record owners did not establish that Brown was either a licensee or invitee. The appropriate standard of care cannot be determined until her entry status is settled. The condition of the premises also presents a disputed question of fact which cannot be decided as a matter of law via a summary adjudication. If, on remand, these issues continue to be pressed on disputed facts, both questions should be submitted for the jury's consideration. The triers would then have to: 1) determine Brown's status as a licensee or invitee; 2) be instructed on the applicable degree of care under guidelines given in this pronouncement; and finally 3) decide whether owners met the standard of care due one in Brown's status.

ON CERTIORARI PREVIOUSLY GRANTED, THE COURT OF CIVIL APPEALS' OPINION IS VACATED, THE TRIAL COURT'S SUMMARY JUDGMENT REVERSED, AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS PRONOUNCEMENT.

KAUGER, C.J., and LAVENDER, HARGRAVE, OPALA, ALMA WILSON and WATT, JJ., concur;

SUMMERS, V.C.J., concurs in part and dissents in part;

HODGES and SIMMS, JJ., dissent.

SUMMERS, Vice Chief Justice,
concurring in part and dissenting in part.

I dissent only from that part of the opinion requiring the jury to make the licensee/invitee status determination.

---

18. *See Henryetta Construction Co. v. Harris, supra,* note 3 at 531; *See also Jack Healey Linen Service Co. v. Travis, supra,* note 7 at 927, where it is stated: "While the general physical condition might be familiar to the actor, a particular risk from the known defect could nevertheless, under the circumstances of a given occasion, be incapable of appreciation. If, as here, conflicting inferences may be drawn from the facts and circumstances in evidence as to whether the offending hazard did have a 'deceptively innocent appearance' or its extent could not be anticipated, neither the trial court nor this court may declare that the peril was obvious and apparent and that recovery is precluded as a matter of law. The question is one for the jury."